

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2004

# Liu v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-4334

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Liu v. Atty Gen USA" (2004). *2004 Decisions.* Paper 539.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/539

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-4334
_____

GUI CUN LIU; XIU DING LIU,

Petitioners

v.

John Ashcroft, ATTORNEY GENERAL
OF UNITED STATES OF AMERICA,

Respondent

_____

ON PETITION FOR REVIEW OF AN
ORDER OF THE BOARD OF
IMMIGRATION APPEALS

(No. A73 168 631)
_____

Argued: December 4, 2003

Before: SLOVITER and ALITO, Circuit
Judges, and OBERDORFER, District
Judge*

_____

* The Honorable Louis F. Oberdorfer,
Senior District Judge for the District of
Columbia, sitting by designation.

(Opinion Filed: June 24, 2004)

JOSEPH C. HOHENSTEIN (Argued)
Nationalities Service Center
1300 Spruce St.
Philadelphia, PA 19107

*Counsel for Petitioner*

ROBERT D. McCALLUM, JR.
TERRI J. SCADRON
ANTHONY W. NORWOOD (Argued)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

_____

OPINION OF THE COURT
_____

ALITO, Circuit Judge:

Mr. Gui Cun Liu and Mrs. Xiu
Ding Liu ("the Lius") petition for review
of an order of the Board of Immigration
Appeals (BIA) affirming the denial of their
application for asylum and withholding of
deportation. Specifically, the Lius allege
that the BIA erred in (1) affirming the
opinion of the Immigration Judge (IJ)
without opinion, in violation of their Due
Process rights, (2) improperly finding that
the Lius' testimony was not credible, (3)
rejecting documentary evidence for failure
to comply with the authentication
procedures detailed in 8 C.F.R. § 287.6,

and (4) ignoring favorable new evidence suggesting increased likelihood of persecution in their home country.

We agree that the IJ's improper application of § 287.6 caused him to disregard evidence that, if duly considered in the first instance, might have resulted in a favorable determination regarding credibility for the Lius. Because the adverse credibility finding was the crux of the order denying relief, we will grant the petition for review, vacate the order of the BIA, and remand.

## I.

The Lius, both citizens of the People's Republic of China, seek asylum on the ground that they are unable to return to their native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). In particular, the Lius claim that Mrs. Liu was twice forced by the Chinese government to undergo an abortion,[1] and that both face government persecution on account of their Christian faith.

The Lius presented to the IJ documentary evidence supporting their claims, including a pair of certificates purportedly confirming that the two abortions had in fact been performed in China on the dates specified. See A.R. 272-73, 445-46. The Lius' counsel explained, upon submission of this evidence, that it had proved impossible to comply with the regulatory authentication procedure set forth in § 287.6; he had "attempted to comply with this procedure, but [was] told by the Chinese officials at the provincial level that no such authentication was performed at that level." A.R. 268; see also A.R. 289 (letter from U.S. Consulate in China to Lius' counsel, explaining that no authentication can be performed until documents have been signed and notarized by a local Chinese foreign affairs official). The IJ nevertheless refused to accept this explanation:

> The regulations are specific, Mr. Hohenstein. It says they shall be certified. There's little or no weight that I can give a document that's in violation of the regulations, whether it be your client's inability to obtain proper certification of a document or whatever. The regulations say the documents shall be. There is no wiggle room there. So, what you'll have to do is, I'll allow it to remain in

---

[1] 8 U.S.C. 1101(a)(42) provides: "[A] person who has been forced to abort a pregnancy . . . shall be deemed to have been persecuted on account of political opinion . . . ." See also In Re Matter of C-Y-Z, 21 I. & N. Dec. 915, 918 (BIA 1997) (holding that past persecution of one spouse can be established by coerced abortion or sterilization of the other spouse).

2

evidence but there's not much weight or any weight that I can give a noncertified document.

A.R. 184-85.

After hearing and considering testimony from both Mr. and Mrs. Liu, the IJ rejected their claims for asylum and withholding of deportation. In so deciding, the IJ relied on findings of several internal inconsistencies in the testimonies which rendered them "incredible." See A.R. 79 (noting "contradictions between the respondents' written applications and their testimony before the Court" as well as "contradictions in the testimony given by the respondents themselves"). In particular, the IJ noted one "dramatic" inconsistency (see A.R. 76) in Mrs. Liu's testimony regarding her second abortion, as reproduced in part here:

> Q. Do you know if the baby was born alive or if it was born dead?
>
> A. They, the nurse told me that it was a baby girl but dead.
>
> Q. What did the nurse tell you again?
>
> A. No, she told me it was a boy and it's, it's dead.
>
> JUDGE TO MRS. LIU
>
> Q. Wait, why do you keep changing your testimony. You just told me the nurse told you it was a baby girl and it was dead, then you say it was a baby boy and it was dead.
>
> A. No, I meant that the nurse was a girl.
>
> Q. Ma'am, just look this way. You see the word stupid written across my forehead?
>
> A. No.
>
> Q. You think I'm going to believe you when you change your testimony like that and give me such a half baked reason for changing the testimony?
>
> A. No, I did not change.

A.R. 214-15; cf. A.R. 306 (affidavit of Mrs. Liu, stating that second aborted fetus was male). The IJ did not make reference to the abortion certificates in analyzing this or any other perceived inconsistency cited in the final decision, although he did state at the opening of his opinion that he had considered "all of the documentation that has been submitted thus far by both sides in this matter." A.R. 66.

On appeal to the BIA, a single member of the BIA elected to affirm the IJ's decision without opinion, pursuant to 8 C.F.R. § 3.1(e)(4). This appeal

3

followed.[2]

## II.

We begin our analysis by evaluating the IJ's interpretation and application of § 287.6 in effectively excluding the abortion certificates.[3] We focus first on this evidentiary issue because we believe it follows from the IJ's reliance on Mrs. Liu's testimony regarding the gender of the fetus that the IJ was under the impression that the second abortion had, in fact, never occurred. In other words, if Mrs. Liu's confusion on this point is to be understood as impugning her credibility, it

---

[2]Because the BIA affirmed without opinion, it is the reasoning and decision of the IJ that we review on appeal. See Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003) (en banc).

[3]We speak of "exclusion" even though we recognize that the IJ technically admitted the certificates into evidence. See A.R. 185. While the IJ's evidentiary rulings are ambiguous as to whether he intended to give the certificates "little weight" or "no weight," see id., the fact that the IJ never referred to the certificates in his final decision suggests that they were not given any weight in making the ultimate decision. That the opinion contained boilerplate to the effect that "all of the documentation" had been considered seems to us irrelevant. See A.R. 66. Of course, if a document is admitted into evidence with the caveat that it will be given "no weight," that is tantamount to an exclusion from evidence.

must be because the IJ took her confusion as evidence that the inconsistently-described fetus never actually existed.[4] To the extent that there exists competent documentary evidence to the contrary (that is, that the abortion *was* performed as described by Mrs. Liu), the credibility determination of the IJ must accordingly be called into question.

The authentication regulation of 8 C.F.R. § 287.6 provides, in pertinent part:

> In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, *shall* be evidenced by an official publication thereof, or by a copy attested by an officer so authorized. . . . The attested copy, with the additional foreign certificates if any, must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept.

Id. (emphasis added). As noted earlier, the IJ focused on the word "shall" in applying the regulation, emphasizing that it left him with "no wiggle room," and that the abortion certificates could hence be

---

[4]For example, it makes little sense to think that the IJ could have taken the inconsistency regarding gender as evidence that Mrs. Liu did indeed have the abortion, but did so voluntarily.

4

accorded only little or no evidentiary weight. A.R. 185.

Our precedent states that "[a]n agency's interpretation of its own regulation is 'controlling . . . unless it is plainly erroneous or inconsistent with the regulation.'" Abdulai v. Ashcroft, 239 F.3d 542, 552 (3d Cir 2001), quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). At oral argument, we specifically requested further guidance from the government as to its official interpretation of the regulation. In its supplemental brief submitted in response, the government contended that "8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge." Letter Brief at 4. In so doing, it cited with approval Khan v. INS, 237 F.3d 1143 (9th Cir. 2001), and Georgis v. Ashcroft, 328 F.3d 962 (7th Cir. 2003), which held that "[i]t was error to exclude . . . official records based solely on the lack of consular certification." Khan, 237 F.3d at 1144.[5]

While the government's reading of § 287.6 may not be the most obvious one, we cannot say that it is plainly erroneous or inconsistent with the regulation.[6]

---

[5]At least one additional court of appeals has recently adopted the holding in Kahn. See Yongo v. INS, 355 F.3d 27, 31 (1st Cir. 2004).

[6]Cf. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995) ("Though 'shall' generally means 'must,' legal writers

Moreover, we fully agree, as the government states in its supplemental brief, that "asylum applicants can not always reasonably be expected to have an authenticated document from an alleged persecutor." Letter Brief at 3; cf. Senathirajah v. INS, 157 F.3d 210, 215-16 (3d Cir. 1998) ("It is obvious that one who escapes persecution in his or her own land will rarely be in a position to bring documentary evidence or other kinds of corroboration to support a subsequent claim for asylum. . . . Common sense establishes that it is escape and flight, not litigation and corroboration, that is foremost in the mind of an alien who comes to these shores fleeing detention, torture and persecution."). We believe that the Lius should have been allowed to attempt to prove the authenticity of the abortion certificates through other means, especially where (as here) attempts to abide by the requirements of § 287.6 failed due to lack of cooperation from government officials in the country of alleged persecution.

The government contends that, in any event, the improper application of § 287.6 was not prejudicial here since there was evidence in the record indicating that official documents from Fujian (such as the abortion certificates here) are commonly forged and thus are "virtually useless" as credible corroborating evidence. Letter Brief at 4; see A.R. 379 (State Department Country Report for

---

sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'").

5

China). However, the government's suggestion that the IJ relied (at least, in part) on the Country Report in his rejection of the abortion certificates is simply inaccurate. It is perfectly clear that the IJ based his decision on § 287.6 alone. See A.R. 184-85; cf. A.R. 95-96 (rejecting other evidence under § 287.6). We may not affirm the exclusion of evidence on grounds entirely different from those relied upon by the agency. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

We conclude that 8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge. Accordingly, it was legal error for the IJ to reject the abortion certificates on that ground alone.

### III.

Against the background of this erroneous evidentiary ruling, we now evaluate the IJ's finding that the Lius were not credible. Because the abortion certificates, if found to be genuine, would corroborate Mrs. Liu's testimony that she had two abortions performed on her—whether or not she misspoke or got confused (or lied) on the point of the second fetus's gender—we believe that remand to the BIA to reconsider the credibility issue is appropriate.

Specifically, we do not believe that the other inconsistencies cited by the IJ, even when viewed together as a whole, amount to substantial evidence that the Lius were not credible. For example:

- The IJ found a "diametrical contradiction" in the fact that Mr. Liu had listed only one child in his original I-589 application, but later testified that he had two children. A.R. 69. A cursory examination of the record reveals that, at the time that the original I-589 was filled out (November 21, 1993), his second child had not even been born yet.[7]

- The IJ found a discrepancy in the fact that Mrs. Liu testified that she was (1) required to check in with the authorities every three months following her first abortion and (2) required to check in with the authorities every three months following her second abortion. A.R. 78-79. Of course, as a logical matter, there is simply no conflict or

---

[7] In fact, the second child was added to the form when it was later corrected by Mr. Liu. Compare A.R. 398, 402 (original I-589) with A.R. 393, 397 (amended I-589).

6

inconsistency between those two statements.

- The IJ found that Mr. Liu contradicted himself with respect to the date and location of his baptism. A.R. 70. Mr. Liu repeatedly testified that he had been baptized in the United States in 1996, see A.R. at 131, 137, which is consistent with the documentary evidence presented, see A.R. at 313. It is true that Mr. Liu once responded with the date November 25, 1991, when asked when he had been baptized. A.R. 130. This confusion almost certainly resulted from the apparent difficulty the translator had in expressing the concept of baptism. See A.R. 131-32.[8] Mr. Liu's subsequent answers made clear that what he had been referring to in connection with that date was the day on which he formally accepted Christianity (by "kneel[ing] down and accept[ing] [his] sin"), which occurred immediately before leaving China in November 1991. A.R. 131, 134; cf. A.R. 396. Mr. Liu expressly distinguished this confession of faith from the actual baptism which was performed later. A.R. 131. There is no basis for a finding of a discrepancy here.

- Likewise, the finding of a discrepancy where Mrs. Liu alternately testified that she was (1) four months and (2) five months along with the pregnancy at the time of the second abortion is trivial, and does little or nothing to contribute to substantial evidence of falsehood on the part of the Lius. A.R. 78; see Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (minor inconsistencies not a proper foundation for adverse credibility determination).

- The IJ relied heavily upon Mr. Liu's statement originally filed with his signed I-589 form (and later retracted by him), in which it was claimed that he had been jailed and fined for failure to comply with the

---

[8] It is evident that translation difficulties seriously plagued the entire hearing. See, e.g., A.R. 103-104 (inconsistent testimony due to confusion regarding translation of "Catholic" and "Baptist"); A.R. 67-69 (repeated questions yielding absurdly nonresponsive answers).

7

one-child policy. A.R. 71-72. The IJ noted that, under 8 C.F.R. § 208.3, Mr. Liu's signature on the form gave rise to a presumption that he was aware of the contents of that application. But the IJ did not explain why this presumption had not been successfully rebutted by other evidence (most notably, the fact that the form is filled out in English, which Mr. Liu does not speak, without listing the name of a third-party preparer, as well as Mr. Liu's testimony regarding the explanation of the statement before the asylum officer: "I said I didn't know what it is"). A.R. at 162.

The other inconsistencies cited by the IJ as evidence of incredibility are similarly ill-founded, trivial, or nonexistent. Absent the one glaring inconsistency regarding the baby's gender (which may or may not be rendered less relevant in light of the consideration of documentary evidence on remand), we do not think that substantial evidence supports the finding that the Lius were not credible.

Finally, we note that remand is appropriate where, as here, we have made a legal determination (e.g., regarding admissibility of evidence) that fundamentally upsets the balancing of facts and evidence upon which an agency's decision is based. We are obliged to remand to the agency to reconsider and reweigh the facts, rather than attempting to undertake that task ourselves. INS v. Ventura, 537 U.S. 12 (2002).[9]

## IV.

We grant the Lius' petition for review, vacate the order of the BIA, and remand to the BIA for further proceedings consistent with this opinion.[10]

---

[9]Specifically, our decision should in no way be read as *requiring* the BIA to find that the abortion certificates are genuine. Rather, the BIA may proceed on remand as it does with respect to any evidentiary question, evaluating issues of materiality, relevance, probity, and the general requirements of due process. See 8 C.F.R. § 1240.7(a); Bustos-Torres v. INS, 898 F.2d 1053, 1055 (5th Cir. 1990). For example, the BIA may (or may not) choose to order forensic testing of the original certificates (as proposed by the Lius), take additional testimony, seek guidance from State Department reports, or evaluate the efforts the Lius took in attempting to avail themselves of the regulatory certification procedure.

[10]Our disposition of this case renders unnecessary any inquiry into the other two arguments raised by the Lius on appeal. However, we note that the due process attack on the affirmance without opinion procedures has essentially been foreclosed by our *en banc* decision in Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003). We also note, with respect to the claim that the BIA

8

failed to consider new evidence regarding "changed circumstances" in China, that while generally the "only vehicle for introducing new evidence post-decision is a motion to reopen," Walters v. Ashcroft, 2003 U.S. Dist. LEXIS 19715 (S.D.N.Y. November 3, 2003), the BIA may choose to consider this evidence on remand, if it deems such action appropriate.