

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2004

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Chen v. Atty Gen USA" (2004). *2004 Decisions.* Paper 218.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/218

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-1057

———

SHIMU CHEN,

Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States,

Respondent

———

On Petition for Review of an Order of the Board of Immigration Appeals
(No. A72-762-031)

———

Submitted Under Third Circuit LAR 34.1(a): October 1, 2004

Before: ROTH and CHERTOFF, *Circuit Judges*, and IRENAS,* *Senior District Judge.*

(Filed: October 19, 2004)

———

OPINION

———

CHERTOFF, *Circuit Judge*.

---

*Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

1

Shimu Chen petitions for review of an exclusion order entered by the Board of Immigration Appeals (BIA) on December 9, 2002. The BIA issued an "affirmance without opinion" of a decision by an Immigration Judge (IJ) denying Chen's request for asylum and withholding of deportation. Chen argues that the IJ failed to adequately consider documentary evidence he submitted and that the IJ erred in finding that he lacked credibility. Because the record shows that the IJ did, in fact, consider Chen's documentary evidence, and that his credibility finding was supported by substantial evidence, we will deny the petition.

I.

Chen arrived in the United States on June 6, 1993 on the cargo ship "Golden Venture," which ran aground near Queens, New York early that morning. Soon after his arrival, the Immigration and Naturalization Service (INS) found him to be excludable and initiated exclusion proceedings against him. Chen applied for asylum and withholding of deportation on the grounds that he had faced persecution for violating China's "one-child" policy. He appeared before an Immigration Judge, who denied his application on August 17, 1993. After Chen's subsequent appeal to the BIA was dismissed, he initiated habeas corpus proceedings in the United States District Court for the Middle District of Pennsylvania.

Following the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which declared that individuals who were subject to

2

coercive population control measures "shall be deemed to have been persecuted on account of political opinion," Chen and the INS filed a joint motion to remand this case to the BIA. See 8 U.S.C. § 1101(a)(42); see also In re X-P-T-, 21 I. & N. Dec. 634 (BIA 1996); In re C-Y-Z-, 21 I. & N. Dec. 916 (BIA 1997). The District Court granted the motion and remanded the case to the BIA. The BIA in turn remanded the case to a second Immigration Judge, who held an evidentiary hearing on September 16, 1998.

At that hearing, Chen testified in support of his claim that he faced persecution for violating China's coercive population control policies. (App. 20-93.) The key elements of his testimony, as it relates to his asylum claim, are as follows: Following the birth of his second child on October 14, 1984, Chen was fined 3,000 RMB[1] by Chinese officials and threatened with sterilization. As he was unable to pay, government officials came to his house in the middle of the night and confiscated his personal possessions. He was subsequently fired from his job as a railroad worker due to his failure to pay the fine. After losing his job, he moved out of his house and began working for his wife's brother-in-law at his sheet-metal store.

On November 1, 1988, Chen and his wife had a third child. Upon registering the child with Chinese authorities he was fined an additional 5,000 RMB. He paid this fine, along with the earlier fine, using money borrowed from his wife's brother-in-law. Following the payment of the fine, the government again demanded that he be sterilized.

---

[1] The IJ noted that, according to the State Department's Country Report, an American Dollar is worth approximately 8.3 RMB (Renminbi). (App. 29.)

3

He subsequently fled China, walking through Burma with a group of about twenty other people before arriving in Thailand, where he boarded the "Golden Venture" and began his several-month journey to the United States.

The IJ held one additional hearing on this case on December 16, 1998, and then, in an oral decision dated May 10, 1999, rejected Chen's application for asylum and withholding of deportation. The IJ stated that he found Chen not credible based on numerous inconsistencies in his testimony. Chen filed a notice of appeal with the BIA, which, on December 9, 2002, issued an "affirmance without opinion" of the IJ's decision, pursuant to 8 C.F.R. § 1003.1(e)(4). Chen now petitions this Court for review of the BIA's decision. Due to the timing of this case, we have jurisdiction under the transitional provisions of the IIRIRA. See Pub. L. No. 104-208, Div. C., Tit. III, Subtit. A, § 309(c)(4)(D), 110 Stat. 3009-626 (1996). When the BIA issues an "affirmance without opinion" pursuant to 8 C.F.R. § 1003.1(e)(4), the decision of the IJ becomes the final agency action on the matter and we scrutinize it accordingly. See Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003) (en banc).[2]

II.

Chen raises two issues in challenging the IJ's decision. He first argues that the IJ

---

[2] We need not address the question of whether an appellate court should review the BIA's decision to employ the procedure under 8 C.F.R. § 1003.1(e)(4) because we find that the BIA's decision to do so in this case was clearly consistent with the requirements of that section.

erred in failing to adequately consider documentary evidence he submitted. Next, he

challenges the IJ's credibility determination. We will address each issue in turn.

A.

In conjunction with his application for asylum and withholding of deportation,

Chen submitted several documents he claimed corroborated his story, including a

marriage certificate, birth certificates for his three children, a household register, a notice

of a fine for having a second child, a receipt for payment of the fine, and a notice from the

railroad stating that he was being dismissed for violating China's one-child policy. At

Chen's September 16, 1998 hearing, the IJ noted that the documents had not been

certified pursuant to 8 C.F.R. § 287.6 and directed Chen to seek certification prior to the

December 16 hearing. (App. 93-94.)

At the latter hearing, Chen's counsel reported that she had sent the various

documents to the American Consulate in Guangzhou, China but had received no

response. (App. 97.) The INS Representative at the hearing stated that he had attempted

to prod the State Department into certifying the documents but had similarly received no

answer. (App. 99.) The IJ expressed his frustration with the State Department's failure

to comply with the request and then gave the parties until January 15, 1999 to attempt

once again to have the documents certified. (App. 105.) The IJ's May 10, 1999 decision

notes that the documents had not been authenticated as of that point. (App. 28.)

The certification requirement reads as follows:

(1) In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized. This attested copy in turn may but need not be certified by any authorized foreign officer both as to the genuineness of the signature of the attesting officer and as to his/her official position. The signature and official position of this certifying foreign officer may then likewise be certified by any other foreign officer so authorized, thereby creating a chain of certificates.

(2) The attested copy, with the additional foreign certificates if any, must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept. This officer must certify the genuineness of the signature and the official position either of (I) the attesting officer; or (ii) any foreign officer whose certification of genuineness of signature and official position relates directly to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation.

8 C.F.R. § 287.6(b).[3] In Liu v. Ashcroft we held that this requirement "is not an absolute rule of exclusion, and is not the only means of authenticating records before an immigration judge." 372 F.3d 529, 533 (3d Cir. 2004). Thus, under Liu, an IJ commits error if he refuses to consider documents solely because they have not been certified in accordance with 8 C.F.R. § 287.6(b).[4] That is not the case before us today, however. While the IJ in this case did require Chen to attempt to have the documents authenticated and then noted his failure to do so in his oral opinion, there is no evidence that he refused

---

[3]China is not a signatory to the Hague Convention on Abolishing the Requirement of Legalization for Foreign Public Documents, so § 287.6(b), rather than § 287.6(c), governs.

[4]Liu did not hold that an IJ must consider documents which have not been certified; rather, it found that IJs must give applicants an opportunity to prove the authenticity of such documents through other means. 372 F.3d at 533.

to consider the documents because they were not authenticated. In fact, the record shows that he relied on one of the documents in reaching the credibility determination that Chen now challenges. Thus, there is no basis on which to conclude that the IJ improperly refused to consider the documentary evidence submitted by Chen. For this reason, we reject Chen's first claim.[5]

## B.

Chen next challenges the IJ's determination that he lacked credibility. In his oral opinion, the IJ found that Chen was "making up his testimony as he is going along." (App. 37.) He justified this finding by noting at least eight different instances in which Chen's testimony was either unbelievable on its face or conflicted with his earlier testimony given during his 1993 exclusion proceedings. For instance, the IJ noted that Chen had initially testified that he was given until November 5, 1991 to pay his 3,000 RMB fine for violating China's one-child policy, then corrected himself and stated that he had until November 5, 1984. He also noted that Chen had contradicted himself regarding who owned the sheet-metal store where he went to work in 1984, stating once that it was his sister-in-law's store, then that it was his wife's brother-in-law's store. He further pointed out that Chen had contradicted himself as to whether he had paid the fine for violating the one-child policy, stating in his 1993 hearing that he had not paid it, only to

_____

[5]Our decision on this issue should not be taken to indicate that we do not share the IJ's frustration with the State Department's failure to respond to the requests made by Chen and the INS.

testify at his September 16, 1998 hearing that he had in fact paid it. When confronted with this apparent contradiction, Chen testified that it was his wife who had actually paid the fine.

It is unnecessary for us to review all of the statements the IJ relied on in making his findings. As a matter of law, our review of an IJ's credibility determination is quite limited. We will not upset an IJ's factual finding unless we conclude that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, if we determine that an IJ's finding is supported by "substantial evidence," that finding must stand. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Such a standard is particularly appropriate in cases involving credibility determinations, because, unlike the IJ, we do not have the opportunity to observe the witness in person. See, e.g., Dia, 353 F.3d at 252 n.23.

In this instance, we conclude that the IJ's finding was supported by substantial evidence. The IJ's oral opinion noted several instances in which Chen's testimony was inconsistent or contradicted earlier statements he had made. While we accept that some of the individual examples cited by the IJ, such as Chen's original assertion that he was given until 1991 to pay his fine, could be the result of translation error, and that immigration judges should take note of such possibilities in reaching credibility determinations, see, e.g., Liu, 372 F.3d at 533-34, we find that the record, taken as a whole, supports the IJ's finding that Chen lacked credibility. As the IJ noted in his oral

8

decision, Chen contradicted himself on important facts that were central to his application, such as whether he had paid the fine for violating the one-child policy, where he worked following his termination from the railroad, and when Chinese officials came to his house to seize his possessions. Although Chen is not very well educated and may have been confused during the proceedings, our role is not to scrutinize the record to determine if other plausible explanations exist for Chen's statements. Rather, our role is limited to reviewing the determinations of the IJ to determine if they were supported by substantial evidence.

Finally, as directed by our decision in Liu, we turn to address the question whether the documents submitted by Chen overcome any deficiencies in Chen's credibility as to a material issue. In Liu, there was a credibility question about whether one petitioner had undergone two abortions. The petitioners submitted documents showing that the Chinese government had twice performed abortions on her. As we noted, the documents, if valid, provided strong corroboration for her testimony that she had undergone abortions and entirely undercut the IJ's determination that she was not credible. See 372 F.3d at 533. Thus, Liu indicates that powerful documentary evidence can itself be sufficient to overcome credibility deficiencies and to support an asylum claim.

But this case is unlike Liu because the documents Chen submitted, standing alone, are not probative on an issue material to his asylum claim. None of the documents demonstrates, for instance, that the Chinese government has attempted to have Chen

9

sterilized. Most of them relate to tangential matters or matters that are undisputed. To be sure, Chen's notice of dismissal from the railroad, if accepted as authentic, does establish that he has been punished for his failure to follow China's one-child policy. But 8 U.S.C. § 1101(a)(42) requires that an alien seeking asylum who has not been the victim of an involuntary abortion or sterilization demonstrate that he or she has faced "persecution" for refusing to undergo such a procedure or, in the alternative, has a "well founded fear" of such persecution. We recently held that being fired for violating the one-child policy does not, on its own, amount to persecution. "[A] person who is fired for violating the [one-child] policy . . . cannot prove past persecution simply by establishing the occurrence of and the reason for the dismissal." Chen v. Ashcroft, 381 F.3d 221, 234 (3d Cir. 2004). The documents submitted by Chen here, unlike those in Liu, do not bear directly on the issue whether he has been the victim of persecution.

Because we find that the IJ's decision in this case had adequate support in the record, we deny the petition for review of the BIA's decision.