

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2005

# Huang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1796

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Huang v. Atty Gen USA" (2005). *2005 Decisions.* Paper 542.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/542

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 04-1796

—————

KAI TING HUANG,

Petitioner

v.

ALBERTO GONZALES[1], Attorney General of the
United States

Respondent.

—————

On petition for review of a final order
of the Board of Immigration Appeals
Agency No: A77-353-862

—————

Submitted pursuant to Third Circuit LAR 34.1(a)
on June 2, 2005

Before: FUENTES, GREENBERG
and COWEN, *Circuit Judges*

(Filed: September 16, 2005 )
_____

OPINION OF THE COURT
_____

_____

[1]Caption amended pursuant to Fed. R. App. Pro. 43(c).

1

Fuentes, *Circuit Judge*.

Petitioner Kai Ting Huang appeals the decision of the Board of Immigration Appeals (BIA) affirming the immigration judge's (IJ) denial of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the BIA's decision was supported by substantial evidence, we will affirm.

## I. Facts and Procedural History

As we write only for the parties, we recite only the essential facts. Huang is a native of China. He alleges that in May 1998, less than three months after the birth of his daughter, government authorities forcibly implanted an IUD in his wife. Huang alleges that the IUD malfunctioned and his wife became pregnant again in October 2000. In an effort to evade family planning officials, Huang's wife moved to another apartment. Nevertheless, in March 2001, authorities were able to locate her and she was forced to have an abortion. Huang claims that the IUD was replanted in April 2001 and that he was fined 10,000 RMB (or "Renminbi"). Huang left China that same month for the United States.

At his airport interview, Huang told an immigration officer that he was married but separated from his wife, and that they have one daughter. He said had come to the United States to "look for a job and to stay here." When asked is he would be harmed if returned to China, he responded that he would, because he owed his friend money. Huang later told immigration officials that he had fled China because of human rights

2

violations, and described the above events.

In May 2001, the INS initiated removal proceedings against Huang under 8 U.S.C. § 1182(a)(6)(C)(i). Huang conceded removability but applied for relief from deportation. The IJ denied his claims in October 2002. In March 2004, the BIA reversed the finding that Huang's application was frivolous, but concurred with the IJ that Huang had failed to meet his burden of proof with regard to eligibility for asylum, withholding of removal, or relief under CAT. The BIA also affirmed the IJ's adverse credibility determination, for the reasons stated by the IJ. Huang now appeals the order of the BIA.

## II. Discussion

We review the BIA and IJ's decisions under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We conclude that the IJ's decision, and the BIA's affirmance of it, were supported by a number of factors.

First, Huang did not initially represent that he was in danger in China but instead indicated that he came to the United States for employment purposes and that he would be harmed if he returned because he owed money to a friend. We are cautious in our reliance on airport interviews, and, standing alone, inconsistencies between statements at such an interview and at later proceedings will not support an adverse credibility determination. See Balasubramanrim v. INS, 143 F.3d 157, 164 (3d Cir.1998). Nevertheless, together with the other factors present in this case, discussed below, we believe the clear answers that Huang gave to immigration officials upon his arrival

3

undermine the credibility of his claims.

A second set of factors supporting the IJ's adverse credibility determination are a number of inconsistencies in Huang's testimony. Huang at one point indicated that he left China in 2000 but on another occasion that he left in 2001. He also first indicated that seven or eight officials came to retrieve his wife for an abortion and later claimed that six or seven officials came. These are minor inconsistencies and "[g]enerally, minor inconsistencies . . . that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir.2004) (quotations and citations omitted). However, Huang's confusion with respect to the details of his claim may be telling in conjunction with a more significant inconsistency regarding whether he was home when the authorities came to retrieve his wife for a forced abortion. Huang testified that he and his wife were both at home but then testified that he was out and was later told what had happened. We cannot dismiss this inconsistency about the event at the heart of Huang's asylum claim as the result of mere nervousness because though Huang reiterated in his testimony that he was not home, in the supplement to his asylum application, he states that he and his wife were at home sleeping when a birth control cadre came for his wife. In that statement, he recounts having begged the officials not to take his wife to the hospital for an abortion, or at the least, to allow Huang to accompany her. We believe that this inconsistency, combined with Huang's statements to immigration officials upon his arrival in the United

4

States, support the IJ's adverse credibility determination.

Huang argues that whatever the IJ's credibility determination, it was obligated to explain why it did not give weight to the documents Huang submitted, which would demonstrate, at least, that his wife underwent the IUD and abortion procedures. But at the hearing, the IJ did give a reason for excluding these documents, i.e., that they were not certified pursuant to 8 C.F.R. § 287.6. Since the proceedings before the IJ and the BIA – but several months before Huang's appeal was briefed before this Court – we have held that "8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge." Gui Cun Liu v. Ashcroft, 372 F.3d 529, 533 (3d Cir. 2004). Unfortunately, Huang failed even to raise this evidentiary issue on appeal, instead maintaining, erroneously, that the IJ did not mention the documents or give any explanation for failing to consider them. Huang did not mention at all the regulation on which the IJ explicitly relied. Accordingly, we deem the issue waived.

For all the foregoing reasons, we will deny the petition for review.