

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2007

# Khan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2149

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Khan v. Atty Gen USA" (2007). *2007 Decisions.* Paper 885.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/885

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No:  06-2149
_____

RASHID AHMAD KHAN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A79-069-471)
Immigration Judge: Donald V. Ferlise
_____

Argued: May 7, 2007

Before:  RENDELL, JORDAN and HARDIMAN, *Circuit Judges.*

(Filed   June 26, 2007)
_____

Anser Ahmad **[ARGUED]**
105 N. Front Street - #106
Harrisburg, PA   17101
    *Counsel for Petitioner*

Peter D. Keisler
Michael P. Lindemann
Jonathan F. Potter
Christopher T. Dong
Ada E. Bosque **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P. O. Box 878
Franklin Station
Washington, DC   20044
   *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Rashid Ahmad Khan, a native and citizen of Pakistan, petitions for review of the order of the Board of Immigration Appeals ("BIA") denying his application for withholding of removal and relief under the Convention Against Torture ("CAT").[1]  Khan argues that the record evidence demonstrates he suffered past persecution and has a well-founded fear of future persecution.  Khan also contends that the BIA erred in affirming the adverse credibility determination of the Immigration Judge ("IJ") because there was insufficient evidence to support the IJ's finding.  We conclude that, in denying Khan's application for withholding of removal and protection under CAT, both the IJ and the

_____

   1Khan did not appeal to the BIA the denial of his asylum application, and he likewise does not challenge that denial in his petition for review.

2

BIA failed to consider documents that are potentially corroborative of Khan's testimony. We will therefore grant review, vacate, and remand for further proceedings.

I.

Khan entered the United States on July 2, 2001, without an immigrant visa. On July 3, 2001, he was given notice that removal proceedings had been commenced against him. Thereafter, he filed an application for asylum, withholding of removal, and protection under CAT.

A.

In his application for asylum, withholding of removal, and relief under CAT, Khan stated that he had been persecuted on account of his political opinion, specifically his membership in the Pakistan People's Party ("PPP") and his opposition to the Muslim League. According to the affidavit that Khan submitted with his application, the first act of persecution occurred in November 1996, when he and several other members of the PPP were arrested for allegedly interfering with a Muslim League rally and attacking Muslim League leaders. Khan claims that he was held in custody for four days, during which he was badly beaten and tortured. He says that, when he was eventually released, he required medical attention for about a week.

Khan goes on to claim that, shortly thereafter, he found work aboard a ship and was out at sea for about a year. He returned to Pakistan in early September 1997. He asserts that, while he was home, he tried to obtain approval for the construction of a girl's

3

high school near his village, so that the children in the village did not have to leave home to attend school. On June 20, 1998, a representative from the Education Department came to inspect the site that would be used for the school. However, Khan says, supporters of the Muslim League and other Islamic organizations also came to the site that day, and demanded that the school not be built. Khan claims that, one month later, he was attacked by members of the groups that had opposed the school construction.

Following the attack, Khan organized a rally in his village, during which he openly criticized the Muslim League and Islamic religious groups. Khan says that, as a result of his speech, the police issued a warrant for his arrest and the local mosque issued a fatwa directing that he be executed. Khan learned of the fatwa the day after it was issued, and he immediately left his home and fled to Islamabad. He claims he went into hiding in Islamabad for two months, until he was able to find work on a ship. Khan also says that, because he feared his life was in danger, he did not return to Pakistan.

B.

The IJ denied Khan's application for asylum because it was not filed within one year of his arrival in the United States. The IJ denied Khan's application for withholding of removal and protection under CAT based on an adverse credibility determination.

With respect to Khan's claim that he had been arrested and beaten by the police, the IJ identified several problems with Khan's testimony. First, the IJ found it particularly significant that, at his hearing, Khan said he could not remember when he

4

was arrested. The IJ could not "understand why if an individual [had] only been arrested once he would not forever remember that date." Appx at 15. The IJ then pressed Khan for an answer, and Khan said that he thought he was arrested in October 1997. On cross examination, however, Khan changed his testimony and said that he was arrested in October 1996. Both of those answers contradict the affidavit Khan submitted with his application, which states that he was arrested in November 1996. Second, the IJ asked Khan whether the charges stemming from that arrest had been dismissed, and Khan replied that they had been dismissed. But, on cross examination, Khan contradicted that testimony by saying that the charges were not dismissed and were still pending.

The IJ also found inconsistencies in Khan's testimony about the incidents surrounding the proposed school construction. At his hearing, Khan testified that, in November 1997, the Muslim League showed up at the proposed school site and beat him up. According to Khan, about a month after he was beaten up, he made a speech to the people in the village and criticized the Islamic religion. Khan claimed that a fatwa was issued against him the same day as that speech. When the IJ asked for a specific date, Khan replied that the fatwa was issued in October 1997. The IJ then pointed out that Khan's testimony did not make sense, because the fatwa would have been issued before the attack in November 1997 even occurred. Khan responded that the attack took place in October 1997 and the fatwa was issued in November 1997. Notably, the responses Khan gave at his hearing also conflict with his application. His application states that the

5

Muslim League supporters showed up at the school site on June 20, 1998, that he was attacked a month later, and that he thereafter gave the speech that led to a fatwa being issued.

The IJ found that Khan's lack of credibility was also highlighted by the discrepancies in his testimony regarding the events that occurred after the fatwa was issued. Khan testified that, after he learned about the fatwa, he fled to Islamabad and hid there for two months until he could get work on a ship. Khan explained that he was able to get on a ship in November 1998. The IJ pointed out that, if Khan's previous testimony was correct, the fatwa was issued in November 1997 and he went into hiding for two months, which would make it January 1998, not November 1998, when he got on the ship. Khan responded by changing his story and agreeing with the IJ that he boarded the ship in January or February 1998, and not November 1998.

Based on the inconsistences in Khan's testimony and his application, the IJ found that Khan demonstrated a total lack of credibility. As a result, the IJ denied Khan's request for withholding of removal and protection under CAT and held that his application was frivolous.

C.

The BIA affirmed in part and vacated in part the decision of the IJ. The BIA agreed that, at his hearing, Khan gave responses that were both internally inconsistent and inconsistent with the affidavit in his application. After discussing several of the

discrepancies relied upon by the IJ and noting that Khan failed to provide a reasonable explanation for those inconsistencies, the BIA determined that the IJ's adverse credibility determination was supported by substantial evidence in the record. Accordingly, the BIA affirmed the denial of Khan's application for withholding of removal and protection under CAT.

However, the BIA concluded that there was insufficient evidence to support the IJ's decision that Khan's application was frivolous. According to the BIA, it was not clear that Khan deliberately fabricated material aspects of his application, and, therefore, he should not be permanently barred from seeking benefits under the Immigration and Nationality Act. 8 U.S.C. § 1101, *et seq*. The BIA therefore vacated the IJ's finding that the application was frivolous.

## II.

Khan filed this petition for review on April 4, 2006. We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a). Generally, we only review the final order of the BIA. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). However, "[w]hen the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). Here, the BIA issued an opinion, but also stated that, with the exception of the finding of frivolousness,

it was deferring to the findings of the IJ. Therefore, we review the decisions of both the IJ and the BIA. *See Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

Like the BIA, we review an adverse credibility determination under the substantial evidence standard. *Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004). It must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)).

III.

Khan argues that there was "absolutely no basis" for the IJ's adverse credibility determination. We cannot agree with that characterization, because there were several notable inconsistencies in Khan's testimony, as already discussed. However, because both the IJ and the BIA failed to address the relevant documentary evidence submitted by Khan, the IJ's adverse credibility determination cannot be upheld. *See Gao v. Ashcroft*, 299 F.3d 266, 277 (3d Cir. 2002) ("The IJ's heavy reliance on the report cards as contradictory evidence of Gao's claims is especially troubling because the IJ failed to discuss in any way the other documentary evidence offered by Gao ... .").

Khan provided several documents that potentially corroborate the testimony he gave before the IJ. He submitted a police report that appears to be consistent with his testimony, in that the report accuses him and other PPP members of disrupting a Muslim League rally and shooting at members of the Muslim League. Appx at 220. Khan's testimony may be further supported by a police report, an arrest warrant, and a court order

8

in the record, because all three relate to allegations that Khan led a rally near school grounds and delivered a speech criticizing the Muslim League and Islam generally. Appx at 216, 218, 223. Also in the record are letters that purportedly came from an Islamic religious group known as Tehrik-e-Nifaz-e-Shariat-e-Mohammadi ("TNSM"), one warning Khan to stop speaking out against Islam and one informing Khan's father that Khan would be killed. Appx at 211, 213. Thus, both seem to corroborate Khan's testimony. Similarly, there are letters addressed to Khan from his father and wife stating that they had been threatened and harassed by members of the TNSM, Appx at 205, 208, as well as letters from his attorney advising him not to come back to Pakistan. Appx at 202, 203.

Another noteworthy document in the record is a psychological assessment of Khan prepared by Dr. Hap Davis in February 2001. Appx at 233-236. Dr. Davis concluded that Khan's account of the events that took place prior to his departure from Pakistan was credible. Appx at. 234. Dr. Davis also found that Khan began suffering from posttraumatic stress disorder in 1996, and that, while those symptoms have since subsided, Khan still suffers from general anxiety. Appx at 234, 236. The IJ should have considered Dr. Davis' report because it may have bearing on the difficulty that Khan experienced when he was asked to recall specific dates for events that took place from 1996 to 1998.

We need not explore the record any further because it is evident that the documents presented to the IJ and the BIA were of probative value but were ignored by the IJ in assessing Khan's credibility. At the start of Khan's hearing, the IJ made it clear that, if he determined Khan lacked credibility, the documents Khan submitted would likely receive no weight.[2] Consistent with that policy, the IJ's opinion only mentions one of the documents submitted by Khan, the arrest warrant, and only to point out that the date on the warrant was inconsistent with Khan's testimony. Appx at 19. The fact that the IJ stated that "all of the evidence" had been considered, Appx at 13, is of no moment, because the documents in fact received virtually no comment and were plainly given no weight.[3] *See Liu v. Ashcroft*, 372 F.3d 529, 532 n.3 (3d Cir. 2004) ("That the opinion contained boilerplate to the effect that 'all of the documentation' had been considered seems to us irrelevant. Of course, if a document is admitted into evidence with the caveat that it will be given 'no weight,' that is tantamount to an exclusion from evidence."(internal citation omitted)). In similar fashion, the BIA affirmed the IJ's adverse credibility determination based on the inconsistencies in Khan's testimony, without considering any of Khan's documentary evidence.

---

[2]Specifically, the IJ stated the following: "If it's let [sic] up to [Khan] to certify [the documents] and if he's not found to be a credible witness, he is going to be hard pressed to certify the documents." Appx at 247.

[3]We should not be understood as requiring immigration judges or the BIA to comment on every piece of evidence an applicant may submit. Rather, plainly relevant documents ought not be passed over without the slightest explanation.

Since the evidence submitted by Khan is, on its face, potentially corroborative of his testimony, it should have been considered and evaluated before his application for withholding of removal and protection under CAT was denied. *Cf. Gao*, 299 F.3d at 277 ("Because of the high probative value of this evidence, which supports Gao's consistent testimony, reconciles ambiguities and conflicts with the suspect report cards, we conclude that it was reversible error for the IJ to fail to evaluate and discuss it."). Therefore, we remand this case to the BIA for further remand to an immigration judge, so that Khan's application, and the previous adverse credibility determination, can be reconsidered in light of all the evidence in the record. We do not make or intend any comment on the authenticity of the documents submitted by Khan or on the weight they should be given. Those are decisions to be made by the fact finder in the first instance. We hold only that the documents cannot properly be ignored.

IV.

For the foregoing reasons, we grant Khan's petition for review, vacate the order of the BIA, and remand to the BIA for further proceedings consistent with this opinion.