

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-2008

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3432

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wang v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1736.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1736

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3432
_____

LI TAO WANG;
XIU YUN SHI,

*Petitioners*

v.

ATTORNEY GENERAL OF THE UNITED SATES,

*Respondent*

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board Nos.  A77-293-178 & A78-712-276)
Immigration Judge: Honorable Rosalind K. Malloy

_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2008

Before: FISHER, HARDIMAN and STAPLETON, *Circuit Judges*.

(Filed:  January 16, 2008)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Li Tao Wang and his wife, Xiu Yun Shi, petition for review of an order of the Board of Immigration Appeals (BIA) finding Wang ineligible for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) and finding Shi ineligible for withholding of removal and protection under the CAT.

I.

Petitioners are citizens of the People's Republic of China. Wang entered the United States on April 12, 2000 without a valid entry document and was placed in removal proceedings. He timely submitted an application for asylum, withholding of removal, and CAT protection in July of 2000. Shi alleged that she entered the United States in July 2000 via Canada and submitted an application for asylum, withholding of removal, and CAT protection in October 2000.

Immigration Judge (IJ) Rosalind K. Malloy denied petitioners' requests for relief. The IJ found Shi statutorily ineligible for asylum because she did not demonstrate by clear and convincing evidence that she applied within one year of her arrival. The IJ also denied the petitioners' remaining claims for relief, finding their testimony incredible and their applications frivolous.

On appeal, the BIA: (1) affirmed the IJ's decision that Shi was statutorily ineligible for asylum; (2) upheld the IJ's finding that the petitioners had testified incredibly; and (3) rejected the IJ's finding that the applications were frivolous.

2

Petitioners claim that they suffered persecution under China's national family planning policy and that they fear future persecution if they are forced to return to China. At an evidentiary hearing before the IJ, Shi testified that she was required to wear an intrauterine device (IUD) after the birth of her first child in July 1994. Shi indicated that she wore the IUD for four years, undergoing routine check-ups four times each year. She stated that she went to a private hospital to have the IUD removed in October 1998, and became pregnant shortly thereafter in November 1998.

Shi testified that she feared arrest on account of her pregnancy and went into hiding in her mother's home in December 1998. When Shi was four to five months pregnant, she was discovered by local officials during a routine residence check and taken for an IUD check-up in a nearby town. Shi claims that upon confirmation of her pregnancy, she was taken to a hospital and forced to have an abortion.

Shi also testified that after she returned home from the hospital, Wang became angry and went to argue with the family planning officials. Shi stated that during the argument, the officials accused Wang of practicing Falun Gong, which caused him to flee to avoid arrest. Shi testified that the officials imposed a fine on the couple ten to fifteen days later. When Wang attempted to argue with the officials about the fine, he was again accused of practicing Falun Gong and again had to flee to avoid arrest. She testified that Wang had never practiced Falun Gong.

Wang then testified, describing his initial argument with the officials, the imposition of the fine, and his subsequent argument with the officials about the fine. Wang indicated that after the second argument, he made arrangements with a "snakehead" to come to the United States. Wang was then asked about his airport interview, in which he told United States immigration officials that he was fleeing China because he had practiced Falun Gong for two days. Wang replied that the snakehead told him to say so when he arrived in the United States.

In addition to their testimony, the petitioners provided documentary evidence in support of their claims, including an unauthenticated certificate of abortion from March 1999, a Chinese identification card for Shi that was issued in August 1999, and a letter from Shi's mother.

## III.

We review the BIA's decision under the "extremely deferential" substantial evidence standard. *Fiadjoe v. Attorney General*, 411 F.3d 135, 165 (3d Cir. 2005). We will not reverse the BIA as long as "a reasonable fact finder could make a particular finding on the administrative record." *See Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003). In cases involving an adverse credibility determination, we must deny the petition for review as long as that determination is "supported by evidence that a reasonable mind would find adequate." *Id.* In addition, we review the IJ's decision to the extent that the BIA adopted it. *See Miah v. Ashcroft*, 346 F.3d 434, 439 (3d Cir. 2003).

IV.

Here, the IJ based her adverse credibility determination upon inconsistencies and flaws in the petitioners' testimony. The IJ took issue with Wang's airport interview, finding it "incredible that one would fail to mention the fact that his wife had an abortion if in fact she had had an abortion, knowing that this is one of the major claims for asylum by citizens of China." (App. 73). With regard to Shi's testimony, the IJ cited the contradiction inherent in her claim that government officials took her for an IUD check-up when she was visibly pregnant, rejecting Shi's explanation that "they didn't know whether I was pregnant or had a big stomach." (App. 74). Furthermore, Shi's claim that she told Wang about the abortion at home after it happened conflicted with her mother's letter indicating that Wang was at the hospital when the abortion was performed. The IJ also took issue with the dates provided by Shi, noting that in her asylum interview Shi claimed to go into hiding in June 1999 whereas she claimed at the hearing that this occurred in September 1999. As a general matter, the IJ noted that Shi "was always quick to come back with accommodating answers." (App. 74).

Furthermore, the IJ found that the petitioners' documentary evidence was unreliable, noting that the abortion certificate they had presented was unauthenticated and that such documents were often fraudulent. The IJ indicated that the petitioners could have presented medical records from the birth of their second child at Temple University

5

Hospital in 2001, noting that those records would have included a thorough gynecological history which would have noted the abortion.

The petitioners raise a valid point regarding the IJ's analysis of Wang's airport interview; there, the IJ assumed that Wang would have "know[n] that [forced abortion] is one of the major claims for asylum by citizens of China." (App. 73). We also note that "inconsistencies between an airport statement and an asylum seeker's testimony before an IJ is (sic) not sufficient, standing alone, to support a BIA finding that the petitioner was not credible." *Fiadjoe v. Attorney General*, 411 F.3d 135, 159 (3d Cir. 2005).[1]

Wang's airport testimony did not stand alone, however. The IJ highlighted several problems with Shi's testimony, including the claim that she was taken for an IUD check-up when she was visibly pregnant, the conflicting accounts of her husband's whereabouts during the abortion itself, and the different dates given for when she first went into hiding. Contrary to the petitioners' assertions that these are "minor inconsistencies and minor omissions," they in fact "involve the heart of the asylum claim." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (internal quotation and citation omitted).

Finally, we note that had the abortion certificate been authenticated, it would have provided strong evidence supporting the petitioners' claims of persecution. Failure to comply with the authentication procedure set forth in 8 C.F.R. § 287.6 "does not . . .

---

[1] However, "where the discrepancies between an airport interview and an alien's testimony 'go to the heart of the claim,' they certainly support an adverse credibility determination." *He Chun Chen v. Ashcroft,* 376 F.3d 215, 224 (3d Cir. 2004).

result in a per se exclusion of documentary evidence, and a petitioner is permitted to prove authenticity in another manner." *Liu v. Ashcroft*, 372 F.3d 529, 533 (3d Cir. 2004). However, the petitioners apparently made no effort to authenticate the abortion certificate, whether in accordance with the procedure set forth in 8 C.F.R. § 287.6 or otherwise. In light of the high incidence of fraudulent abortion certificates cited by the IJ and noted in the State Department's Country Conditions Report, the IJ did not err in faulting the petitioners for failing to authenticate the abortion certificate.

V.

For the foregoing reasons, we find that the IJ's adverse credibility determination was supported by substantial evidence and we will deny the petition for review.