

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2005

# Dong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3851

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation
"Dong v. Atty Gen USA" (2005). *2005 Decisions.* Paper 538.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/538

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3851

JIAN WEI DONG,

Petitioner

v.

*ALBERTO R. GONZALES, Attorney General of the United States,

Respondent

*Amended Pursuant to Fed.R.App.P. 43(c)

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
File No.: A78-863-135

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: September 16, 2005)

_____

OPINION OF THE COURT

_____

SMITH, *Circuit Judge*.

Jian Hui Dong petitions for review of a final order of the Board of Immigration

Appeals ("BIA") affirming without opinion the denial by the Immigration Judge ("IJ") of

his application for asylum, withholding of removal and relief under the Convention

Against Torture ("CAT").[1]  For the reasons set forth below, we will deny the petition for

review.[2]

"The federal asylum statute confers discretion on the Attorney General to grant

asylum to an alien applicant 'if the Attorney General determines that such alien is a

refugee within the meaning of section 1101(a)(42)(A).'" *Abdille v. Ashcroft*, 242 F.3d

477, 482 (3d Cir. 2001).  Dong claims that he qualifies as a refugee because his wife was

involuntarily sterilized under China's coercive population control program.  *See* 8 U.S.C.

§ 1101(a)(42)(A) (defining "refugee" as a person persecuted on account of certain

protected grounds, including political opinion, and providing that a person who has been

involuntary sterilized "shall be deemed to have been persecuted on account of political

opinion"); *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004) (noting that the BIA

extended § 1101(a)(42)'s protection to include the spouse of an individual who has been

sterilized or otherwise subject to a coercive population control program) (citing *In re C-Y-*

_____

[1]The IJ had jurisdiction of Dong's asylum application under 8 C.F.R. § 1208.2 (2003). The BIA exercised jurisdiction pursuant to 8 C.F.R. § 1003.1(b) (2003).  Our jurisdiction is predicated on § 242(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b).

[2]Dong's brief fails to address the merits of his claim for withholding of removal and for relief under the CAT.  Accordingly, these claims are waived and we need not address them. *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court"); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

2

Z, 21 I. & N. Dec. 915, 918 (BIA 1997)). Dong bears the burden of establishing that he qualifies as a refugee under the statute. *Abdille*, 242 F.3d at 482.

At a hearing before the IJ, Dong testified on direct examination that he and his wife, Yan-Zhu, had two daughters, Mei and Ting, born respectively in February 1995 and September 1999. Although Dong and Yan-Zhu wanted a son, the local birth control office forcibly inserted an IUD into Yan-Zhu. Dong and Yan-Zhu were able to pay a private physician to remove the IUD, allowing Yan-Zhu to conceive again in May of 2000. The following month Yan-Zhu went into hiding at an aunt's house and Mei and Ting stayed with Dong's mother. When Yan-Zhu failed to appear for a scheduled appointment later that month to check on her IUD, local birth control officials visited their house. Dong told them Yan-Zhu was at a relative's, and they advised that Yan-Zhu should report for her check-up. Dong claimed that he feared problems, and went into hiding in Fuzhou City in late August, eventually finding a job in construction. Their son, Qi, was born in February 2001.

Dong affirmed that their son was born at the aunt's house, and that a month later Yan-Zhu was forcibly taken away and sterilized. Dong went to the hospital after learning of the procedure from the aunt. Thereafter, a fine of 60,000 RMB was assessed. Dong claimed that in April, after he refused to pay the fine, he was arrested and detained for ten days at the birth control office, and was treated "very bad."

Dong was released after Yan-Zhu paid 18,000 RMB of the fine. Dong testified

that birth control officials "constantly come to my house to harass about the fine and at the end I eventually left my home." He explained that the officials came to his house "[s]even to eight times" before he left in May 2002. Yan-Zhu's affidavit was consistent with Dong's testimony, stating that after Dong "was released, the birth control officials still often pressed him to pay the fine." In response to further questioning during his direct examination, Dong affirmed that he was in Fuzhou before May 2002 and that he learned that the officials came to the house seven or eight times because Yan-Zhu advised him of that fact by telephone.

Dong departed China in mid-May. He explained that he left "because I hate China, I didn't want to live there and . . . I want to get out of there." He added that he hated China because Yan-Zhu was sterilized and they were fined. He claimed that the fine remained unpaid and that birth control officials "constantly come to the house to harass about the fine."

At the beginning of the hearing, Dong offered exhibits of his national ID card, birth certificates for his wife and children, a marriage certificate, the household registration booklet, a receipt for partial payment of the fine imposed for the unauthorized birth of their son, and a hospital x-ray report indicating that Yan-Zhu's fallopian tubes were ligated. Because these were foreign documents that had not been certified in accordance with 8 C.F.R. § 287.6, the IJ excluded the documents. Government counsel, however, cross-examined Dong about several of the documents. First, he inquired how

4

Yan-Zhu and Mei were entered in the household registration book on August 22, 2000 if Yan-Zhu was in hiding during her third pregnancy. Dong explained that he handled the registration, and that the authorities completed the entry and instructed that she must report for her scheduled IUD checkup. He also affirmed that he handled the registration of his second and third child in July 2002. When asked about the apparent inconsistency in his testimony (Dong testified that he departed for the United States in May 2002), Dong indicated that his wife took the booklet to officials to complete. Dong explained that he could not complete the household registration booklet any sooner because of the unpaid fine. Registration was eventually permitted, even though the fine was unpaid, because his wife's friend had connections with an official at the bureau. Although this friend was initially characterized as Yan-Zhu's friend, Dong subsequently stated that it was his friend from when he worked in construction. On redirect, Dong affirmed that Yan-Zhu and his friend went together to complete the registration.

Government counsel pointed out that the statement appended to Dong's application and Yan-Zhu's affidavit indicated that he was personally pressured to pay the outstanding fine and then went into hiding, and that these statements contradicted his testimony that he learned of the persistent demands from his wife after he went into hiding. In response, Dong affirmed that the officials made one demand upon him before he went into hiding and that he learned of the additional seven or eight visits from his wife. Dong confirmed that, while he was in Fuzhou working, nothing further happened to

5

his wife and that his daughters were able to go to school.

Government counsel also inquired about the timeline of certain events in light of Dong's statements during an airport interview which was conducted in the Fuzhou language. During that line of questioning, Dong indicated that when his wife was sterilized she was also detained for ten days in the same room in which he had been detained. When the government pointed out that Yan-Zhu's affidavit, which noted Dong's arrest, did not mention that she had been detained, Dong stated that "[s]he probably forgot and also she is not well-educated."

The IJ found Dong not credible and denied Dong's application for asylum, withholding of removal, and relief under the CAT. As support for his finding, the IJ pointed out inconsistencies between Dong's testimony and some of the exhibits he offered. In addition, the IJ highlighted the fact that Dong contradicted himself on several occasions while testifying whether he was home after Qi's birth and when the birth control officials demanded payment of the outstanding balance of the fine. Dong appealed to the BIA, which affirmed the IJ without opinion. This timely petition for review followed.

Dong challenges the IJ's adverse credibility finding. In addition, he asserts that the IJ's "strict adherence" to the regulation requiring the certification of documents violated his due process right to a full and fair hearing.

When the BIA affirms without opinion a decision of an IJ, "we review the IJ's

opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003). Our review under § 242 of the INA is limited as the "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This standard requires that "the agency support its findings with substantial evidence. . . ." *Dia*, 353 F.3d at 247. Substantial evidence exists if a "reasonable fact finder could make a particular finding on the administrative record. . . ." *Id.* at 249. We review de novo Dong's contention that his due process rights were violated. *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 405 (3d Cir. 2003).

After consideration of the record, we conclude that there is substantial evidence to support the IJ's adverse credibility determination. At the heart of Dong's claim of persecution is that, after his wife was involuntarily sterilized, he fled because he was constantly harassed by birth control officials demanding payment of the remaining balance of the fine imposed for the unauthorized birth of his son. Dong's testimony in this regard, however, was not a model of consistency. He contradicted himself on several occasions about when he was at home after the birth of his son, how frequently birth control officials visited his home demanding payment, and whether he was actually subjected to the repeated demands for payment. Because this testimony goes to the heart of Dong's claim, we will not disturb the IJ's finding that Dong's testimony was incredible. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

Nor are we persuaded that Dong's due process rights were violated. We agree that

7

the IJ erred by excluding some of the documentary evidence Dong offered because of

Dong's failure to comply with 8 C.F.R. § 287.6, which requires authentication of foreign

records and documents.[3] And we have recognized that an alien may be deprived of his

due process rights if he is prevented from making his case to the BIA or the IJ. *See*

*Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). Yet there was nothing in the

excluded exhibits that was critical to Dong's claim of persecution. For example, the IJ

excluded the exhibits of Dong's national ID card, birth certificates for his wife and

children, his marriage certificate, and the household registration booklet. There was no

dispute, however, about Dong's nationality, that Yan-Zhu was his wife and that they had

three children born in 1995, 1999, and 2001 respectively. The x-ray report indicating that

Yan-Zhu's fallopian tubes were ligated did not provide evidence pivotal to Dong's

asylum claim either given that it did not prove forcible sterilization. Because the

evidence that was excluded did not impair Dong's ability to make his case before the IJ,

we conclude that Dong's due process rights were not violated. *Wilson v. Ashcroft*, 350

F.3d 377, 381 (3d Cir. 2003) (observing that due process violation cannot be established

in the "absence of prejudice").

We conclude that there is substantial evidence to support the IJ's determination

---

[3]*See* 8 C.F.R. § 287.6. In *Liu v. Ashcroft*, 372 F.3d 529, 533 (3d Cir. 2004), we concluded that the IJ erred by according too little or no weight to an abortion certificate solely on the basis that it was unauthenticated under 8 C.F.R. § 287.6. We declared that this regulation "is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge." *Id.* at 533.

that Dong was not persecuted.  We will deny Dong's petition for review.