

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-27-2005

# Jiang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2920

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jiang v. Atty Gen USA" (2005). *2005 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2920
_____

AI XUN JIANG,

Petitioner,

vs.

Attorney General of the United States,

Respondent.
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
U.S. Department of Justice, Executive Office for Immigration Review
(BIA No. A78 726 602)
and an Order of
Immigration Judge Donald V. Ferlise
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 8, 2005
_____

Before: ROTH, FUENTES, and GARTH, <u>Circuit</u> <u>Judges</u>

(Filed: December 27, 2005)

_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

Ai Xun Jiang ("Jiang") petitions for review of a decision of the Board of

-1-

Immigration Appeals ("BIA") affirming the denial by an Immigration Judge ("IJ") of his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). We will grant the Petition.

I.

Jiang is a native and citizen of the People's Republic of China. He alleged that he was fined, and his wife was forcibly sterilized, by government officials in 1990 after the couple produced four children in violation of China's one-child family planning policy.

In 2000, after paying $55,000 to a snakehead – a sum which he had borrowed from others – Jiang left China, and traveled to and entered Los Angeles without the proper travel documents. After he filed an application for asylum,[1] the INS[2] charged him under 8 U.S.C. § 1227(a)(1)(A) and placed him in removal proceedings.

In support of his asylum application, Jiang submitted documents that would have substantially corroborated his claims: these documents included notarial birth certificates for his four children, a receipt for the fine he was forced to pay for having four children, and his wife's "sterilization certificate." Jiang also submitted letters documenting his

---

[1] An alien whose spouse is forced to undergo a sterilization procedure can establish past persecution on account of political opinion, and qualifies as a refugee under immigration law. *Matter of C-Y-Z-*, 21 I. & N. Dec. 915 (BIA 1997) (en banc).

[2] As of March 2003, "the INS ceased to exist as an independent agency within the United States Department of Justice ['DOJ'] and its functions were transferred to the newly formed United States Department of Homeland Security." *Leia v. Ashcroft*, 393 F.3d 427, 430 n.4 (3d Cir. 2005). The BIA remains within the DOJ. *Knapik v. Ashcroft*, 384 F.3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002)).

attorney's unsuccessful attempts to have similar documents from an unrelated case authenticated by the U.S. Consulate General's office in Guangzou and the Fujian Province Foreign Affairs Office.

At a February 26, 2002 hearing, Immigration Judge Donald V. Ferlise found that the documents Jiang submitted had not been properly certified pursuant to 8 C.F.R. § 287.6.[3] The IJ thus ruled that while he would "allow [the documents] to remain in the record . . . [he would] not give them any weight." The IJ did not acknowledge the letters documenting Jiang's attorney's attempts to have similar documents certified.

When Jiang began to testify at the hearing, he contradicted himself several times,[4]

_____

[3] That regulation provides, in pertinent part,

> *§ 287.6 Proof of official records.*
>
> (b)(1) In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized . . . The attested copy, with the additional foreign certificates if any, must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept. This officer must certify the genuineness of the signature and the official position either of (i) the attesting officer; or (ii) any foreign officer whose certification of genuineness of signature and official position relates directly to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation.

8 C.F.R. § 287.6.

[4] For example, Jiang stated that his wife had an IUD that state family planning officials had inserted removed in 1995; when asked again when the IUD removal

and exhibited a demeanor that the IJ found to be "excessively nervous," at one point

actually "jumping up and down in the witness chair." The IJ noted that "[t]he respondent

appears to be getting his dates mixed up," and, on motion of Jiang's attorney, continued

the hearing until January 24, 2003. The IJ advised Jiang:

> You'll come back and you'll see me the next time. I would
> suggest that you try not to be as nervous. If you have a
> continuing problem with your nerves, you might want to see a
> doctor about it. But the next time you come back, you'll have
> to complete your case.

Jiang returned to immigration court on January 24, 2003 for a second hearing.

## II.

After the January 24, 2003 hearing, the IJ found Jiang not credible and denied his

application. The IJ arrived at his adverse credibility determination because he found that

Jiang's testimony at both his hearings was marked by confusion, inconsistencies and

implausibilities. In explaining the adverse credibility determination, the IJ noted that

Jiang did not present the court with any admissible evidence to corroborate his testimony.

The IJ also held that even if he had found Jiang credible and believed that he

suffered persecution in the past, he would nevertheless deny Jiang's application because

---

occurred, he said "1985," but then corrected himself and settled on "1984." Jiang also
stated that when his wife became pregnant for the second time the couple went to his
mother-in-law's home to avoid detection by the government. He first stated that this
happened in September 1984, and then stated that it happened in September 1985.
Finally, Jiang became confused about the date on which he and his wife went to his
sister's home so his wife could give birth to one of their children.

"there has been a fundamental change in circumstances to the extent that the respondent would no longer have a well-founded fear of persecution if he is returned to his country." The IJ apparently arrived at this conclusion based on two assumptions he made: (1) the Chinese government would not persecute Jiang for his past flouting of the one-child family planning policy because it had not done so in the ten years between his wife's forced sterilization and Jiang's departure for Los Angeles, and (2) he could not be constrained by the policy again, or punished for future disobedience of it, because his wife had already been sterilized and so the couple could not have any more children anyway.

Further, Jiang stated in his I-589 application and at his hearing that if he is returned to China he will be punished because he left the country with the help of smugglers. The IJ held that this feared punishment, if it came to pass, would not be *persecution* within the meaning of the Immigration and Nationality Act, but rather *prosecution*, against which the Act does not protect.

The BIA affirmed in a one-paragraph opinion. It found no clear error with the IJ's adverse credibility determination, or the fact that the IJ accorded Jiang's documentary evidence no evidentiary weight.[5]

---

[5] The BIA did not address the IJ's "changed circumstances" theory. It apparently treated Jiang's claim that he feared punishment for leaving China with the assistance of smugglers as though it was offered only in support of Jiang's claim under the CAT, holding that "although the respondent may be subject to detention and fines for his use of illegal alien smugglers and violating Chinese exit laws, he failed to establish that he will *more likely than not be tortured* upon his return to China."

## III.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we review the decisions of both the IJ and the BIA. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

The Attorney General has discretion to grant asylum to any alien who qualifies as a refugee. *See* 8 U.S.C. § 1158(b)(1)(A); *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003). For relevant purposes, a refugee is any alien who is unable or unwilling to return to his country of nationality because of past persecution or a well-founded fear of future persecution on account of political opinion. *See* 8 U.S.C. § 1101(a)(42)(A); *Lukwago*, 329 F.3d at 167. An applicant who establishes that he or she has suffered past persecution on account of political opinion "triggers a rebuttable presumption of a well-founded fear of future persecution, as long as that fear is related to the past persecution." *Lukwago*, 329 F.3d at 174. An IJ may, however, exercise his or her discretion to deny asylum to even an applicant who has established past persecution if, for example, "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A). The government has the burden of establishing changed circumstances by a preponderance of the evidence. 8 C.F.R. § 208.13(b)(1)(ii).

Whether an asylum applicant has established past persecution or fear of future persecution is a factual determination that we analyze under a substantial evidence

-6-

standard. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). We must uphold the IJ's factual findings if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An adverse credibility determination, too, is a finding of fact. *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003). It may be "based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." *Id.* at 249 (quotations and citation omitted). "[M]inor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety," however, "are not an adequate basis for an adverse credibility finding. The discrepancies must involve the 'heart of the asylum claim.'" *Gao*, 299 F.3d at 272 (quotations and citations omitted). "Where an IJ bases an adverse credibility determination in part on 'implausibility' as the IJ did here, such a conclusion will be properly grounded in the record only if it is made against the background of the general country conditions." *Dia*, 353 F.3d at 249.

## IV.

We first address the IJ's alternate conclusion: that even if Jiang had credibly testified that he suffered persecution in the past, he would nevertheless not be entitled to asylum because circumstances have changed in China. As noted above, the IJ based his finding of changed circumstances on the fact that ten years expired between Jiang's

wife's forced sterilization and Jiang's departure from China during which he experienced no persecution (which indicated the absence of a Chinese government inclination to persecute for violation of the one-child family planning policy), and on the fact that Jiang's wife has already been sterilized (so Jiang could not logically fear future persecution by sterilization of his wife).

In *In re Y-T-L*, 23 I. & N. Dec. 601 (BIA 2003), the Board considered the asylum application of a Chinese man whose wife had been forcibly sterilized seven years before he left China, and who had not been persecuted during those seven years. The IJ had denied asylum because he found that the government could rebut the presumption of a well-founded fear of future persecution by establishing changed circumstances. The BIA reversed, holding that neither the passage of time between sterilization and departure from China nor the forced sterilization itself constituted changed circumstances. Specifically, it stated

> We disagree with the Immigration Judge that the passage of time since the forced sterilization of the respondent's wife, coupled with the lack of enforcement of coercive family planning measures during that period, constitutes a "fundamental change" in the respondent's personal circumstances which . . . is sufficient to meet the Service's burden under 8 C.F.R. [208.13(b)(1)(ii)]. The Immigration Judge's conclusion fails to take into account the *continuing nature of the persecution* inflicted on the respondent and his wife. Moreover, the principal reason that the respondent and his wife no longer fear a coerced sterilization . . . is the fact that they have been rendered incapable of having children. Thus, the Immigration Judge's rationale could lead to the anomalous result that the act of persecution itself would also constitute the change in circumstances that would result in the denial of asylum to persons such as the respondent. It is

> highly unlikely that Congress contemplated such an
> interpretation when it deemed forced involuntary sterilization
> to be persecution on account of political opinion.

*Id.* at 605 (emphasis added). *See also, e.g., Chen v. United Stated Department of Justice,* 426 F.3d 104, 112 (2d Cir. 2005); *Mohammed v. Gonzales*, 400 F.3d 785, 799-800 (9th Cir. 2005).

We will reject Judge Ferlise's conclusion under this clear language. If Jiang credibly testified that his wife underwent a forced sterilization, he thus thereby fulfilled his burden and was entitled to asylum without having to show an independent well-founded fear of future persecution**.**

The IJ found, however, that Jiang was not credible. We next examine whether that finding was supported by substantial evidence.

V.

The IJ based his adverse credibility finding on confusion, inconsistencies and implausibilities in Jiang's testimony. That finding was clearly also informed, however, by the absence of corroborating documents that the IJ was willing to admit into evidence.[6]

---

[6] A finding of a failure of proof "is *not* a proper ground *per se* for an adverse credibility determination," *Abdulai v. Ashcroft*, 239 F. 3d 542, 551 n. 6 (3d Cir. 2001). Such a failure of proof, however, often informs such a determination (or vice versa). *See, e.g., Liu v. Ashcroft,* 372 F. 3d 529, 531-532 (3d Cir. 2004); *Miah v. Ashcroft*, 346 F.3d 434, 440 (3d Cir. 2003).

In the time since the IJ effectively excluded[7] Jiang's documentary evidence because Jiang failed to certify it pursuant to 8 C.F.R. § 287.6 – and the BIA explicitly affirmed that exclusion – we have held that "8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means of authenticating records before an immigration judge." *Liu v. Ashcroft*, 372 F. 3d 529, 533 (3d Cir. 2004). *See also Zhang v. Gonzales*, 405 F. 3d 150, 155-156 (3d Cir. 2005); *Leia v. Ashcroft*, 393 F.3d 427, 433-435 (3d Cir. 2005). It was thus legal error for the IJ to exclude the documents merely because they were not authenticated through the means outlined in 8 C.F.R. § 287.6. The IJ should have given Jiang the opportunity to attempt to authenticate the documents in some other fashion, *see Liu*, 372 F.3d at 534 n.9; *Leia*, 393 F. 3d at 435, and thereafter (if Jiang succeeded) should have taken the documents he submitted into consideration.

If on remand Jiang succeeds in authenticating his documents, the IJ must determine whether, in light of the documents' corroboration of significant parts of his story, the confusion, inconsistencies and implausibilies in Jiang's testimony are still sufficient to support the adverse credibility determination. We recently noted that

> Remand . . . is appropriate in situations where . . . a court of appeals has made a legal determination (e.g., regarding the admissibility of evidence) that fundamentally upsets the balancing of facts and evidence upon which an agency's decision is based. In such instances, we are obliged to remand to the agency to reconsider and reweigh the facts, rather than attempting to undertake that task for ourselves.

---

[7] *See Liu v. Ashcroft*, 372 F. 3d 529, 532 n.3 (3d Cir. 2004) ("if a document is admitted into evidence with the caveat that it will be given 'no weight,' that is tantamount to an exclusion from evidence").

*Leia*, 393 F.3d at 435. *See also Liu*, 372 F.3d at 534 (citing *INS v. Ventura*, 537 U.S. 12, 17018 (2002)). We do note, however, that as a basis for an adverse credibility determination, the confusion, inconsistencies and implausibilities that marked Jiang's testimony is relatively weak.

For example, the IJ placed weight on the fact that Jiang's testimony at his first hearing was marked by confusion as to the dates of several material events (see footnote 5). The IJ adjourned the first hearing, however, because Jiang was so nervous that he "appear[ed] to be getting his dates mixed up." In February 2002, the IJ interpreted Jiang's confusion about dates as being a result of his nerves. We find it troubling that Jiang's confusion was ultimately considered an indicator of Jiang's untruthfulness, and used to justify denial of his application.

Further, the IJ placed weight on the fact that Jiang stated at his first hearing that his wife's IUD was removed in July 1984, but stated at his second hearing that the IUD was removed in July 1985. This misstatement should not render any other part of Jiang's testimony incredible, however; his second child was born on June 20, 1986 (more than nine months after either July 1984 *or* July 1985). Neither does it go to the heart of Jiang's claim, as a mistake about the date of the forced sterilization might. *See, e.g., Gao*, 299 F.3d at 272. Jiang's other misstatements that the IJ cited are similarly trivial.

Moreover, the IJ improperly based some of his findings of implausibility on speculation. For example, Jiang stated that because his wife gave birth to their second

and third children in hiding, the state did not know about those children.  When he and his

wife wanted to have a fourth child, they applied to the state for – and the state granted

them – permission to have what it thought would be a second (but what would actually be

a fourth) child.  Jiang testified, however, that after that child was born, the state forcibly

sterilized Jiang's wife anyway.  The IJ stated that

> what [Jiang] would have me to believe is that involuntary
> sterilization is . . . the reward one faces for requesting and
> being granted permission to have a second child.  The Court
> truly believes that in this instant case [Jiang's] wife probably
> thought that four children was enough and she voluntarily
> submitted to the sterilization.  His testimony about the
> involuntary sterilization is implausible.

There is no basis in the record for the IJ's incredulity.  In fact, the record contains explicit

support for Jiang's story.  For example, a document in the record entitled Fuzhou City's

Enforcement of Fujian Province Family Planning Regulations includes Rule #11, which

provides that "[c]ouples belong[ing] to agricultural households have to undertake . . .

sterilization operation after having two children."  The IJ's finding of implausibility was

thus not properly based in the record.  *See Dia*, 353 F.3d at 249.[8]

V.

---

[8] We do not take account of other alleged inconsistencies, implausibilities and legal problems with Jiang's application that the government raises in its brief but that neither the IJ nor the BIA addressed.  "[A] 'simple but fundamental rule of administrative law [is] that a reviewing court, in dealing with a determination of judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.'" *Wang v. Attorney General*, 423 F.3d 260, 270 (3d Cir. 2005) (*quoting SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

For the foregoing reasons, we will grant Jiang's Petition for Review, vacate the order of the BIA, and remand to the BIA for further proceedings consistent with this opinion.