

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2006

# Feng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3943

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Feng v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1610.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1610

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3943

———

JIN LI FENG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
DEPARTMENT OF HOMELAND SECURITY

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A77-027-800)
(Honorable Eugene Pugilese, Immigration Judge)

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 30, 2006

Before: MCKEE, VAN ANTWERPEN, and SILER*, Circuit Judges.

(Filed February 9, 2006)

———

OPINION OF THE COURT

———

_____
* Honorable Eugene E. Siler, Jr., Circuit Judge for the United States Court of Appeals for
the Sixth Circuit, sitting by designation.

VAN ANTWERPEN, Circuit Judge.

Petitioner Jin Li Feng, a native and citizen of China, seeks review of the August 27, 2003, Order of the Board of Immigration Appeals ("BIA") that dismissed her appeal from the Immigration Judge's ("IJ") denial of her applications for asylum and withholding of removal. We have jurisdiction over the petition for review pursuant to 8 U.S.C. § 1252(a)(1), and for the reasons set forth below, we will grant the petition.

**I.**

As we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis. On April 19, 1998, Feng and her two children attempted to enter the United States at New York and were denied admission and placed in custody. Feng was then charged with removability under 8 U.S.C. § 1182(a)(6)(C)(i) (attempting to obtain entry by means of fraud or misrepresenting a material fact) and § 1182(a)(7)(A)(i)(I) (attempting to obtain entry without valid documentation). Feng denied the fraud allegation but conceded removability under § 1182(a)(7)(A)(i)(I) and filed an application for asylum relief.

At a merits hearing held on June 9, 1999, Feng testified that after the birth of her second child in 1981, Chinese officials came to her home and took her to a hospital where she had an intrauterine device ("IUD") inserted. Feng testified that the IUD remained in place for nine years.

Feng stated that Chinese officials subsequently tightened enforcement of the nation's one-birth policy, and came to her home on February 28, 1990, at which time they threatened

2

to destroy her home and took her to a hospital where she underwent an involuntary tubal ligation.[1]  Feng did not present any documentary evidence to establish whether the tubal ligation was voluntary or involuntary.  Although Feng's mother-in-law (but not her husband) was at home when these officials came to take her to the hospital, the mother-in-law did not provide any affidavit because Feng did not ask her to do so.  Feng claimed that she continued to suffer dizziness after the tubal ligation, although the IJ did not find credible Feng's testimony that she still suffered from dizziness related to the 1990 tubal ligation at the time of the hearing in 1999.

Feng also testified that on March 7, 1990, she was fined 5000 RMB by the Chinese government for violating the nation's one-birth policy.  When asked to explain why the Chinese government had waited approximately eight years after her second child was born to fine her, Feng testified that in 1981, the "birth control official is not that tight.  They're not too hurry."

In 1991, Feng's husband paid a smuggler $30,000 to bring him to the United States, after which he sent Feng money.  Feng testified that in 1998, she borrowed $90,000 from friends and family to pay a smuggler to bring her and her children to the United States.  Feng testified that she left China because she had not received any word on the status of her husband's asylum application and because she feared that her children would face the same

_____

[1]Feng presented a hospital certificate verifying that the tubal ligation had taken place, and the fact of the tubal ligation was confirmed in 1998 by a doctor in the United States.

3

treatment in China as she had.

Feng's husband also testified before the IJ in support of her application, and he stated that he left China because of his wife's persecution to seek asylum in the United States. In his asylum application, Feng's husband had stated that his family had been fined 3000 RMB for violating China's birth policy, as opposed to the 5000 RMB fine to which Feng had testified. He also claimed that because the family was unable to pay this fine, "the local officials moved away furniture and demolished our house. Homeless, we had to shelter ourselves in our relative's home."

Feng's husband's oral testimony differed from his asylum application. First, the husband testified that his family was fined 5000 RMB for its violation of China's one-birth policy, not 3000 RMB. The husband also testified that although Chinese officials harassed his family at their home before he paid the fine, the officials ceased doing so after he paid the fine and did not destroy the family's home, which contradicted his asylum application. The husband attributed these discrepancies to the fact that the agency that assisted him with filling out his asylum application did not show him the completed application.

At the close of the hearing, the IJ denied Feng's applications for asylum and withholding of removal. The IJ first noted the inconsistencies between Feng's husband's testimony and his asylum application. First, the IJ found that the differences between the husband's asylum application (family's furniture taken and their home destroyed, leaving family homeless) and his testimony (house *not* destroyed and family *not* left homeless) were

4

purposeful "slight [sic] of hand" that rendered him incredible.

The IJ then noted that the crux of the case was whether Feng's sterilization was voluntary or involuntary, and that the husband's testimony that the sterilization was involuntary was consistent with Feng's testimony but was nevertheless unreliable because of the other inconsistences between his oral testimony and his asylum application. Second, while the IJ believed that Feng had been sterilized, the IJ found it illogical that the Chinese government would fine and sterilize her nine years after the birth of her second child despite her faithful use of the IUD during that time:

> "It would seem that the [Chinese] government would have better use of its time and resources than to sterilize a woman who had been faithfully using an IUD for a nine year period . . . That doesn't make a great deal of public policy sense . . . [T]o be provided with a nonsensical explanation or rationale for government activity certainly is not a way to enhance one's case in putting forth an asylum matter and it can only serve in the Court's view to undermine the case."

The IJ also questioned why Feng would wait until 1998 to leave China, eight years after the alleged 1990 sterilization. The IJ noted that Feng's husband had left China in 1991 to seek asylum and concluded that by 1998, Feng had simply grown tired of waiting for her husband to obtain asylum and left China to seek a better life for herself and her children, not to flee persecution.

In an Order dated August 27, 2003, the BIA dismissed Feng's appeal from the IJ's decision. In that Order, the BIA concurred with the IJ that Feng was not credible, noting that Feng's claim that her family was fined 5000 RMB for violating the one-birth policy was

5

inconsistent with the 3000 RMB fine described in her husband's asylum application. The BIA also found that this inconsistency cast doubt on Feng's allegation that she had been forcibly sterilized, observing that her husband's testimony that the sterilization was forcible was cast into doubt by the inconsistencies between his testimony and asylum application. The BIA also found "no adequate explanation for why [Feng] would have been forcibly sterilized almost 9 years after the birth of her youngest child, and when she had been fully complying with using an IUD."

## II.

Where the BIA substantially uses the IJ's findings, but also makes findings of its own, we review both decisions. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review findings of fact, including adverse credibility determinations, under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Such determinations will stand unless a "reasonable adjudicator would be compelled to conclude to the contrary," considering the totality of the circumstances. Gao, 299 F.3d at 272 (quoting 8 U.S.C. § 1252(b)(4)(B)). "Adverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." Id.

## III.

Feng has the burden to prove, through credible evidence, either past persecution or a well-founded fear of future persecution on account of a statutorily protected ground, including, *inter alia*, involuntary sterilization. 8 U.S.C. § 1101(a)(42)(B). Upon proving

6

past persecution, Feng is "presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1). The IJ's adverse credibility determination must involve the "heart of the asylum claim." Gao, 299 F.3d at 272.[2]

An IJ "must state a reason and detail with specificity the issues of non-credibility." Id. at 275. Conclusions must be based on "specific, cogent reason[s]." Dia v. Ashcroft, 353 F.3d 228, 250 (3d Cir. 2003). We have "cautioned against placing too much weight on inconsistencies between an asylum affidavit and subsequent testimony." Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir. 2003).

## IV.

As described supra, the IJ and BIA denied Feng asylum on the grounds that Feng had failed to adequately explain the nine year gap between the birth of her second child and the alleged sterilization and that she was not credible because of discrepancies between her asylum application and oral testimony and those of her husband. We address these in turn.

### A. IUD Implantation

The IJ and BIA questioned the nine-year gap between Feng's IUD implantation in 1981 and the alleged 1990 sterilization; despite Feng's claim that the Chinese government tightened its enforcement of the one-birth policy in 1990, the IJ believed that it was

---

[2]Feng submitted her asylum claim before the effective date of the Real ID Act, and therefore is not subject to a new provision that allows IJs to rely on inconsistencies "without regard" to whether they go to the heart of the asylum claim. Real ID Act of 2005, § 101(a)(3), Pub.L. No. 109-13, 119 Stat. 231, 303, *codified at* 8 U.S.C. § 1158(b)(1)(B)(iii).

implausible that the Chinese government would sterilize someone who had continuously used an IUD for nine years. As we have explained, a credibility determination based on implausibility must be grounded in the record to avoid speculative or conjectural reasoning. Qun Zheng v. Gonzales, 417 F.3d 379, 381 (3d Cir. 2005). In this case, the IJ stated his belief – with which the BIA appeared to agree – that the Chinese government would not have operated in a manner he personally considered illogical. However, the IJ's own beliefs regarding the expected operations of the Chinese government were mere speculation and were not grounded in record evidence or evidence of country conditions. See Jishiashvili v. Att'y Gen., 402 F.3d 386, 393 (3d Cir. 2005). Accordingly, the IJ's contention that there had not been a satisfactory explanation of the nine year gap between Feng's IUD and sterilization was not a proper basis for the adverse credibility finding. Id.; see also Zhang v. United States Dep't of Justice, 2005 U.S. App. LEXIS 23764, at *11 (3d Cir. Nov. 1, 2005) (unpublished opinion) (rejecting IJ's speculation regarding workings of foreign government where IJ failed to ground conclusion in record evidence and alien provided "reasonable explanation" of government's actions).[3]

### B. Feng's and Husband's Presentations

The IJ and BIA also rested their adverse credibility findings on the idea that Feng's husband's oral testimony was unreliable because it was not consistent with that of his asylum

---

[3]The IJ's disbelief that Feng would suffer physical pain nine years after the alleged sterilization is similarly speculation that is not based on any record evidence.

application and that Feng's own testimony was incredible because it was not consistent with her husband's asylum application. This credibility determination was not supported by substantial evidence.

We agree that Feng's husband was not credible. While the discrepancy existing between Feng's husband's asylum application (3000 RMB) and oral testimony (5000 RMB) regarding the amount of his family's fine was minor, see Yang v. Ashcroft, 104 Fed. App'x 259, 262 (3d Cir. 2004) (unpublished opinion) (minor discrepancy between accounts of amount of fine paid for release from prison did not support adverse credibility finding), his testimony and asylum application were inconsistent regarding (1) whether the family actually paid the fine; (2) whether the family's home was destroyed by Chinese officials on account of its failure to pay the fine; and (3) whether Feng's IUD was inserted and then removed after the birth of their first child. Feng's husband claimed these discrepancies were the fault of the agency that filled out his application, but given the gravity of these events, we cannot agree that the discrepancies were the fault of the agency. See Xie, 359 F.3d at 243 (serious inconsistencies between agency-prepared asylum application and testimony regarding treatment by government officials basis proper for adverse credibility).

Having found Feng's husband not credible, the IJ and BIA then found *Feng* incredible because of the discrepancies between her presentation and her husband's asylum application. The BIA's conclusion that Feng was not credible because her presentation was not consistent with that of her incredible husband makes no logical sense because it would

9

be incongruous for the BIA to find Feng credible had her presentation agreed with that of her incredible husband. The BIA appears to "want it both ways" in that Feng is incredible because her account *does not agree* with that of her incredible husband, but she also would necessarily be incredible if her account *did agree* with that of her incredible husband. We can not approve of such an anomalous result, and accordingly, we cannot agree that Feng's failure to testify in accordance with her incredible husband dooms her applications for relief.

Putting these logical inconsistencies aside, Feng's claim that she underwent forced sterilization was not contradicted by her own or her husband's presentation; both of them stated in their asylum applications and oral testimony that she had suffered an involuntary sterilization. The discrepancies between her presentation and that of her husband concern events (IUD implantation, amount of fine) apart from the critical question of whether her sterilization was involuntary and thus lie outside of the "heart" of her asylum claim. See Gao, 299 F.3d at 272; see also Jiang v. Att'y Gen., 2005 WL 3527845, at *5 (3d Cir. Dec. 27, 2005) (husband's mistake regarding date of wife's IUD implantation did not go to heart of claim that wife had undergone involuntary sterilization). Accordingly, these discrepancies were not a proper basis on which to rest an adverse credibility finding.

## V.

As discussed, the IJ and BIA based their adverse credibility determination on impermissible speculation and on differences between Feng's and her husband's presentation that were collateral to the question of whether the sterilization was voluntary.

10

Feng's presentation regarding whether her sterilization was forcible was internally consistent and consistent with her husband's presentation on this issue. We have considered all other arguments made by the parties on appeal and conclude that no further discussion is necessary. Accordingly, we will grant the petition for review.