

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2008

# Peng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4379

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Peng v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1462.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1462

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4379

———

HAN PENG,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent

———

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A96-203-350
Immigration Judge: Miriam K. Mills

———

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2008

———

Before: BARRY, CHAGARES and ROTH, <u>Circuit Judges</u>

(Opinion Filed: March 11, 2008)

———

OPINION

———

BARRY, <u>Circuit Judge</u>

　　Han Peng petitions for review of an order of the Board of Immigration Appeals

("BIA") affirming the Immigration Judge's ("IJ") denial of his application for

withholding of removal and relief under the Convention Against Torture ("CAT"). We will deny the petition for review.

## I.

Because we write only for the parties, familiarity with the facts is presumed, and we include only those facts that are relevant to our analysis.

Peng, a citizen of Indonesia, is an ethnic Chinese Christian. He entered the United States on July 25, 2001 as a nonimmigrant visitor for pleasure, authorized to stay until January 24, 2002. He overstayed his visa, and on April 3, 2003, the government commenced removal proceedings. He thereafter applied for withholding of removal and relief under the CAT, claiming that he fled Indonesia to escape the threat of violence at the hands of Indonesian Muslims.[1]

On May 20, 2005, following a hearing, the IJ denied Peng's applications, finding that his testimony was not credible, and that he failed to establish that he would more likely than not suffer persecution or torture upon returning to Indonesia. On September 14, 2006, the BIA adopted and affirmed the decision of the IJ. Peng filed a timely petition for review.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252. Where, as here, "the BIA issues a summary affirmance under its streamlining regulations, we essentially review the IJ's

---

[1] Peng also filed an application for asylum, but he subsequently withdrew that application.

decision as if it were the decision of the BIA." *Jishiashvili v. Attorney General*, 402 F.3d 386, 391 (3d Cir. 2005). We review the IJ's findings of fact, including credibility findings, for substantial evidence. *See Dia v. Ashcroft*, 353 F.3d 228, 247-250 (3d Cir. 2003) (en banc). Under this standard, the IJ's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 247 (citing 8 U.S.C. § 1252(b)(4)(B)).

### III.

To be entitled to withholding of removal, an alien must "establish by a 'clear probability' that his/her life or freedom would be threatened in the proposed country of deportation. 'Clear probability' means that it is 'more likely than not' that an alien would be subject to persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003) (internal citations omitted). "An applicant for relief on the merits under [the CAT] bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* at 471 (citation omitted).

The IJ found that Peng's testimony was not credible, in large part because his claim that he was attacked by a mob during a May 1998 riot changed considerably over time. With each new telling – first in an affidavit dated July 3, 2003, then in an affidavit dated April 12, 2005, and finally at his hearing before the IJ – the severity of the alleged

attack increased.[2]  We agree with the IJ that Peng failed to adequately explain the

---

² In the July 3, 2003 affidavit, Peng stated:

> When I saw the Native Indonesian mobs attacking the Chinese shops and homes, I immediately pulled down the iron gate in front of my shop to try to secure my shop.  My home/living quarters were in the back of the shop.  At the time of the attack, I was at home with my wife and two young children.  I immediately gathered my family to the back of the shop to our living quarters.  We remained there in hiding for two or three days.  (A.R. 285.)

In the April 12, 2005 affidavit, he stated:

> When I saw the Native Indonesian mobs attacking the Chinese shops and homes, I tried to protect the entrance into my store.  I stood in the doorway against the right side of the doorframe with my left hand stretched against the left side of the doorframe to prevent the invasion of Indonesian mobs.  A group of 5-6 Indonesian Muslims approached and tried to push me out of their way to get into my store, and one of them cut my left arm with a knife.  My arm was bleeding badly.  After the Indonesian Muslims left, my neighbor, Jhonny, helped me to pull down the iron gate in front of my store and than [sic] he took me to a Public Health Center, where I was treated for my wound.  (A.R. 107.)

At his hearing, he testified as follows:

> On May, May 15th – yeah – I opened my shop – it was a air conditioning shop – around 10 o'clock or 11 o'clock in the morning.  Okay.  Then around kilometer from my store, the, the Indonesians were, were attacking shops – okay – yeah – such as shopping malls, banks.  They, they, they attacked and they, they looted.  Okay.  And they were – they did it very cruelly if the shop could not be looted.  Yeah.  They took some gasoline and it was, it was poured in from below and, and lit, and lit.  And this – then the people headed for my store.  And when they got to my store, I closed the store.  I went, I went inside.  Okay.  And they, and they, they – and those people just broke down, broke down the door.  And they wanted to, to, to steal my goods.  And, and I don't know how many there was.  They were carrying knives.  And, and there was about 20 people.  I, I, I tried to stop them like this.  Okay.  And one of them carried – used a knife and he cut me like this.  Okay.  And then I, I, I fell down.  I didn't know what was

4

discrepancies, which are particularly troubling because they relate to the only instance of harm that Peng claims to have personally suffered. These discrepancies alone – and the IJ identifies others – are sufficient to support the IJ's adverse credibility finding. Because we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary," *Dia*, 353 F.3d at 247, substantial evidence supports the IJ's finding that Peng was not credible.

Peng claims that the IJ failed to consider documentary evidence that would have corroborated his testimony because the documents were not properly authenticated pursuant to 8 C.F.R. § 287.6. According to Peng, he should be permitted an opportunity to authenticate the documents through other means. This argument lacks merit because the documents that Peng identifies would not rectify or explain the discrepancies underlying the IJ's adverse credibility finding, in particular the finding that Peng repeatedly changed his account of the alleged attack. *Cf. Liu v. Ashcroft*, 372 F.3d 529, 533 (3d Cir. 2004) (remanding to the BIA to consider documents that "if found to be genuine, would corroborate [the petitioner's] testimony").

Finally, Peng criticizes the IJ for failing to adequately consider documentation relating to country conditions, and claims that the IJ's failure to consider this evidence violated his right to due process. "Official as well as unofficial country reports are probative evidence and can, by themselves, provide sufficient proof to sustain an alien's

happening. After that – after, after I was able to get up again, I, I was in the hospital and I was – people were helping me. (A.R. 71-72.)

burden" of proof under the Immigration and Nationality Act. *Zubeda*, 333 F.3d at 477. We have explained that such documentation "is important because the picture it paints provides a background against which to assess [a petitioner's] credibility." *Dia*, 353 F.3d at 246. While an IJ "is not required to write an exegesis on every contention," *Zubeda*, 333 F.3d at 477 (citation and internal quotation marks omitted), we find it troubling that the IJ's decision neglects even to mention the country reports submitted by Peng.

Notwithstanding the above, however, given the nature of the IJ's findings, Peng suffered no prejudice. First, we have held that anti-Chinese violence in Indonesia, such as that documented in press accounts and country reports, "does not appear to be sufficiently widespread as to constitute a pattern or practice" of persecution. *Lie v. Ashcroft*, 396 F.3d 530, 537-38 (3d Cir. 2005). Therefore, a petitioner, such as Peng, cannot rely solely on country reports to establish a clear probability that he will be persecuted, and must present additional credible evidence sufficient to meet his burden of proof. Peng's proffered evidence, which the IJ reasonably found to be incredible, is plainly inadequate.

Second, the IJ found that Peng was not credible based on discrepancies in his accounts of the alleged attack. While a finding that an alien's testimony is implausible might reasonably be influenced by the "background" painted by country reports, *see Dia*, 353 F.3d at 249 ("Where an IJ bases an adverse credibility determination in part on 'implausibility'..., such a conclusion will be properly grounded in the record only if it is

made against the background of the general country conditions."), the discrepancies in Peng's story were independent of the IJ's understanding of country conditions. The country conditions – regardless of what they were – could not have cured the obvious problem with Peng's testimony, i.e. the fact that his story kept changing.

## IV.

For the foregoing reasons, we find that substantial evidence supports the IJ's findings that Peng failed to establish that it was more likely than not that he would face persecution or torture upon returning to Indonesia. Therefore, we will deny the petition for review.