**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3952 & 10-3068
_____

SHAO JIE HUANG,

                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petitions for Review of Orders of the
Board of Immigration Appeals
(Agency No. A088-996-356)
Immigration Judge:  Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 6, 2011

Before:  RENDELL, JORDAN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed April 7, 2011)
_____

OPINION
_____

PER CURIAM

Shao Jie Huang seeks review of final orders issued by the Board of Immigration

Appeals ("BIA").  For the reasons that follow, we will deny the petitions for review.

Because the parties are familiar with the background, we will present it here only

briefly. Huang is a citizen of the People's Republic of China and is from Fujian Province. He arrived in the United States in May 2007. In September 2007, he applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). He was later charged with removability for being an alien present without being admitted or paroled after inspection by an immigration officer. Huang conceded removability.

In November 2008, the Immigration Judge ("IJ") conducted a hearing on Huang's claim of persecution concerning China's restrictive family planning laws. Huang testified that he and his wife had their first child, a daughter, in July 2005. Under the government's policy, they were permitted to have a second child five years later. In the meantime, following their daughter's birth, government officials took Huang's wife to the hospital to have an intra-uterine device ("IUD") inserted to prevent pregnancy. She was required to report for gynecological checkups every few months. Huang's wife secretly had a private doctor remove the IUD, and she became pregnant a few months later, in December 2006. To avoid detection by the family planning authorities, she and her daughter went into hiding at Huang's grandmother's house. In January 2007, officials came to Huang's home to take his wife to her checkup, but Huang made excuses for her absence. The officials threatened him with forced sterilization and a fine. The pregnancy was their second violation of the family planning laws, the first having occurred when Huang's wife already was pregnant with their first child when they registered their marriage. Huang stated that they wish to have more children. He feared

2

that, if the pregnancy were discovered, his wife would be forced to have an abortion and would be subjected to a forced sterilization. If she delivered the child, they would not be able to add the child to the household registry. After discussing the matter, the couple decided to terminate the pregnancy in February 2007, feeling that they had no choice but to do so.

Huang left for the United Sates shortly after the termination of the second pregnancy. The authorities in China never learned of his wife's second pregnancy; she had an IUD reinserted and continued to attend her periodic checkups. She and their daughter remained in China. Huang acknowledged that he and his wife are permitted to have another child. He stated that they wish to have at least three more children, but he believes that one of them would be forced to undergo sterilization after having a second child.

The IJ denied all forms of relief and ordered Huang removed to China. On September 14, 2009, the BIA dismissed Huang's appeal, agreeing with the IJ's conclusions that Huang had not met his burden of proof on his asylum and withholding claims and also did not establish eligibility for CAT relief. Specifically, the BIA concurred with the IJ's determination that Huang's wife's IUD insertions were insufficient to establish an asylum claim, that Huang is precluded from basing his asylum claim on his wife's abortion, and that his claims of past persecution regarding the payment of a fine and fear of future persecution based on the possibility of having another child were based on conjecture and speculation. The BIA also found that Huang

3

failed to meet the more stringent burden of proof for withholding of removal. Further, the BIA agreed with the IJ's conclusion that Huang failed to establish eligibility for CAT relief, noting that Huang failed to establish that each step of a hypothetical chain of events is more likely than not to occur.

In December 2009, Huang filed with the BIA a motion to reopen his case to file a successive asylum application based on previously unavailable evidence. In support, he asserted that in May 2009, family planning officials imposed on his wife a fine of RMB 11,800, for their prior violation of the family planning policy. The officials threatened sterilization of Huang's wife and removal of their daughter from the household registration if the fine remained unpaid after three months. Huang noted that his wife protested that she and Huang already had paid a fine of RMB 3,000, to no avail. Huang further stated that officials came to the house every two weeks to ask for payment. With financial assistance from friends, Huang gave the money to his father (a United States permanent resident) to take with him during a visit to China; his father gave the money to Huang's wife, who then paid the fine on August 28, 2009. The officials warned that if the couple violated the policy again, one of them would be sterilized and another heavy fine would be assessed. Huang stated his fear of forced sterilization or imposition of a heavy fine if he and his wife were to have a second child. With his motion to reopen, Huang submitted a new asylum application and statement. He also submitted exhibits, which included a letter and identity documents from his father, a receipt for the payment of the new fine, and a letter and identity documents from neighbors in China who also

4

had to pay a fine under similar circumstances.  On June 24, 2010, the BIA denied the motion to reopen, noting that the documents from China had not been authenticated under 8 C.F.R. § 1287.6, and that Huang had not established the authenticity of the documents in an alternative manner.  The BIA held that the evidence was insufficient to show that Huang would be subjected to economic harm amounting to persecution or that he would be subject to forcible sterilization, and that Huang thus failed to show a realistic chance of establishing eligibility for relief to warrant reopening.

Huang filed timely petitions for review regarding both of the BIA's decisions, and the matters have been consolidated in this Court for disposition.  We have jurisdiction pursuant to 8 U.S.C. § 1252.  The BIA agreed with the IJ's decision and added its own reasoning, and thus, we review the decisions of both the IJ and the BIA.  See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009).  We review the agency's factual determinations under the substantial evidence standard.  See id. at 251.  The agency's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We exercise de novo review over the agency's legal decisions.  See Sandie, 455 F.3d at 251.  We apply the abuse of discretion standard to our review of the BIA's denial of Huang's motion to reopen.  See Sevoian v. Ashcroft,  290 F.3d 166, 174 (3d Cir. 2002).  Applying that standard, Huang must show that the BIA's denial of his motion was somehow arbitrary, irrational, or contrary to law.  See id.

Huang acknowledges this Court's decision in Lin-Zheng v. Attorney General,

557 F.3d 147 (3d Cir. 2009), and that there is no automatic refugee status accorded to spouses of individuals who have been forced to undergo an abortion. However, under Lin, spouses remain eligible for relief if they qualify as a refugee under 8 U.S.C. § 1101(a)(42) based upon their own persecution, or well-founded fear of persecution, for "other resistance" to a coercive population control program. See id. at 157. Huang argues that the BIA failed to assess whether he established eligibility for asylum in his own right. For example, Huang argues that he suffered past persecution in light of the fine imposed for the first pregnancy, the threat that he would be sterilized while his wife was in hiding, and the severe emotional harm he suffered when his wife had an abortion. The BIA did not ignore his arguments. Instead, in its decision, the BIA referred to that portion of his brief addressing those claims on appeal and rejected his arguments as unpersuasive. It also specifically considered and rejected Huang's argument that the 3,000 RMB fine constituted persecution.

Moreover, the record does not compel a finding that Huang suffered past persecution or has a well-founded fear of future persecution on account of his "other resistance" to China's family planning policies. Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). However, it "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." Id. Concerning the RMB 3,000 fine, although "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or

6

freedom may constitute persecution," Li v. Att'y Gen. of the U.S., 400 F.3d 157, 168 (3d Cir. 2005), Huang did not show that the fine rose to that level. As the BIA noted, Huang's assertion that the fine was particularly onerous was based not on his own financial situation but instead on the supposition that the fine probably exceeded his annual income--an assumption based on his young age at the time of the fine and a rural net income figure published in a State Department China report. As for the threat that Huang would be sterilized if his wife did not report for her examination, we are not compelled by the record to conclude that BIA erred in deciding that the evidence for that claim is too speculative to be credited. Nor can we say that the record compels the conclusion that, contrary to the BIA's judgment, Huang has established persecution in his own right, based on his wife's abortion. Concerning Huang's claimed fear of future persecution if he and his wife were to have a second child in the future and would want additional children, we are not persuaded that the agency erred in finding the claim to be speculative. The record contains evidence that Huang and his wife have one child and are in compliance with family planning laws, and that they would be permitted to have another child under local policy.

Because Huang was ineligible for asylum, we also agree that he was unable to meet the higher standard applicable to applications for withholding of removal. See Wong v. Att'y Gen., 539 F.3d 225, 236-37 (3d Cir. 2008). As for his CAT claim, although Huang asserts generally that he is eligible for relief based on the evidence, he identifies no record support for his position and makes no specific challenge to the

agency's decision on this point. We conclude that he has not shown that he is entitled to CAT relief.

We now turn to the BIA's denial of Huang's motion to reopen. Motions to reopen are reserved for only "compelling circumstances." See Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). A motion to reopen must establish prima facie eligibility for relief, that is, a reasonable likelihood of establishing entitlement to relief, upon review of evidence accompanying the motion as well as record evidence. See id. at 563 and n.7 (citing Sevoian, 290 F.3d at 173 n.5. Such showing notwithstanding, the BIA "has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a).

Huang argues that the BIA erred in discounting the evidence solely because the evidence was not authenticated pursuant to the requirements of 8 C.F.R. § 1287.6. In its decision, the BIA recognized that the failure to authenticate pursuant to § 1287.6 is not an automatic rule of exclusion. See Liu v. Ashcroft, 372 F.3d 529, 533 (3d Cir. 2004). Although the BIA noted that Huang did not prove authenticity of the evidence in another manner, and although Huang now protests that he should not have been faulted for failing to authenticate his documents, the BIA did not exclude the evidence from consideration and did not solely rely on the lack of authentication in denying Huang's motion to reopen. Rather, it also relied on Matter of T-Z-, 24 I. & N. Dec. 163, (BIA 2007), for the proposition that a showing of economic sanctions does not amount to persecution where the record contains little information concerning the respondent's own financial situation.

8

Huang argued in his motion to reopen that the two separate fines amounted to two to three times the annual income of his family while he was living in China, but he pointed to no particular evidence in the record of his income or net worth at the time the second fine was imposed, which occurred while he was living and working in the United States.[1] We discern no abuse of discretion here.

Huang also challenges the BIA's statement that the evidence does not indicate that Huang would be subject to forced sterilization in China. He argues that the BIA ignored the portion of the State Department Country Report on Human Rights Practices for China, 2006, that indicates that forced sterilizations do occur in China, in Fujian Province in particular. See Pet'r. Brief at 13 (citing C.A. No. 10-3086 J.A. 306.) Because the Report on the cited page states that officials in Fujian Province reportedly forcibly sterilized *women*, the statement provides little support for Huang's position that *he* would subject to forced sterilization for a violation of the family planning laws, and the BIA's failure to consider that portion of the evidence thus does not appear to have been arbitrary or irrational. As the BIA noted in its decision, the Report also lists punishments such as fines, adverse job-related consequences, expulsion from the party, and destruction of property were applied to violators of the family planning laws in China. Although the Report also states that one parent was often pressured to undergo sterilization in cases

---

[1] At the hearing before the IJ in 2008, Huang testified that he was employed as a kitchen worker in the United States. At the time of the hearing, he had been working for about thirteen months and was earning about $10,000 per year. (C.A. No. 09-3952 J.A. 149.)

9

where the family already had two children, Huang and his wife have only one child. In sum, Huang does not point to evidence that shows that the BIA abused its discretion in finding that Huang failed to demonstrate a realistic likelihood that he can establish eligibility for asylum on his claim, or that the BIA's decision was arbitrary, irrational, or contrary to law.

We will deny the petitions for review.